UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF SUKHBAATAR BATBOLD FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782,<br><br>*Petitioner*. | Case No. __21-mc-218__ |

**DECLARATION OF YUFEI WANG IN SUPPORT OF SUKHBAATAR BATBOLD'S *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

I, Yufei Wang, declare as follows:

### INTRODUCTION

1. I am currently an Associate at the law firm WongPartnership LLP, based in Singapore. I was admitted as a solicitor in Singapore in 2018. I act as counsel to Sukhbaatar Batbold ("**Mr. Batbold**") in proceedings currently pending in the High Court of the Republic of Singapore, and submit this Declaration in support of Mr. Batbold's Application for an Order Seeking Discovery Pursuant to 28 U.S.C. Section 1782 (the "**Application**") permitting him to issue a subpoena for the production of documents and deposition testimony from K2 Intelligence or K2 Integrity (collectively "**K2**").

2. Unless otherwise stated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by Mr. Batbold and/or professionals retained by Mr. Batbold, and upon my review of relevant documents, including the proposed subpoenas. If called as a witness, I could and would testify competently regarding the information set forth herein.

**THE SINGAPORE PROCEEDINGS**

3. On November 26, 2020, three entities purporting to be plaintiffs (the "**Plaintiffs**") filed an action in the High Court of the Republic of Singapore (the "**Singapore Court**") against Mr. Batbold, among other individuals (the "**Singapore Proceedings**"). The Plaintiffs were represented by Rev Law LLC, and included the Agency for Policy Coordination on State Property of Mongolia, the Erdenet Mining Corporation, and Erdenes Oyu Tolgoi LLC. Among other things, the Plaintiffs alleged that Mr. Batbold owned property in Singapore through a series of proxies, and sought to freeze that property. Attached hereto as **Exhibit A** is a true and correct copy of the Statement of Claim filed in the Singapore Proceedings. On November 27, 2020, the Plaintiffs also obtained *ex parte* a Mareva freezing injunction against the Defendants in the Singapore Proceedings (including Mr. Batbold) (the "**Singapore Injunction**"). The Singapore Injunction was based in part on affidavits submitted by Jules Kroll, which recounted an investigation conducted by K2.

4. In the Order of Court for the Singapore Injunction, the Singapore Court directed Mr. Batbold to submit an affidavit disclosing all assets in Singapore, which Mr. Batbold provided. In that affidavit, Mr. Batbold swore under penalty of perjury that he had no assets in Singapore.

5. On February 17, 2021, Mr. Batbold applied to permanently stay the Singapore Proceedings, on the grounds that, among others, the Singapore Proceedings were duplicative of the proceedings pending in Mongolia commenced against Mr. Batbold on October 14, 2020 (the "**Mongolian Proceedings**"), and that Mongolia was a more appropriate forum to address the Plaintiffs' claims against Mr. Batbold (the "**Stay Application**"). Alternatively, Mr. Batbold requested that the Singapore Proceedings be temporarily stayed pending the final outcome of the Mongolian Proceedings. For the avoidance of doubt, Mr. Batbold has denied all allegations brought against him in the Singapore Proceedings. On March 5, 2021, Mr. Batbold and the

Plaintiffs entered into a consent Order of Court to stay the Singapore Proceedings as against him (the "**Stay Order**"). Under the Stay Order, parties may at any time apply for the stay to be lifted, including but not limited for the purposes of setting aside and/or varying the Singapore Injunction. If the Stay Order is lifted, Mr. Batbold may need to prepare his defence in the Singapore Proceedings, which will require him to submit evidence in response to the allegations made against him in the Singapore Proceedings.

### THE DISCOVERY SOUGHT IS RELEVANT TO THE SINGAPORE PROCEEDINGS

6.  I understand that Mr. Batbold is requesting discovery in New York that will enable him to contest the merits of the Plaintiffs' claims against him in Singapore if the Stay Order is lifted. Specifically, Mr. Batbold seeks to introduce evidence of (a) the sources of funding for the K2 investigation that undergirded the *ex parte* request for the Singapore Injunction, which the Singapore Court granted, including whether the K2 investigation was on contingency; (b) the identity of the party or parties who authorized the K2 investigation and retained K2's services; and (c) documents or information in K2's possession uncovered over the course of its investigation into Mr. Batbold.

7.  The evidence sought would be relevant to the Singapore Proceedings in the event that the Stay Order is lifted, for multiple reasons. *First*, uncovering the sources of funding for the K2 investigation and—by extension—the global litigation advanced against Mr. Batbold, as well as the identity of the parties who provided the authority for the investigation and the proceedings worldwide could be highly probative for the Singapore Court. The Singapore Court's decision to issue the Singapore Injunction was done so in its discretion, based on the record the Plaintiffs put before it during an *ex parte* proceeding. If the Singapore Court were to learn the true identities of

the parties responsible for the K2 investigation and the global litigation against Mr. Batbold—and to possibly learn that the global proceedings were initiated as part of a political disinformation campaign against Mr. Batbold—it could inform the Singapore Court's opinion as to whether the *ex parte* relief was warranted in the first instance and whether it should be lifted.

8. *Second*, Mr. Batbold seeks documents from K2's years'-long investigation. The Kroll affidavits, filed in the Singapore Proceedings, provide the purported facts that were relied upon by the Plaintiffs and used to justify the need for *ex parte* relief in the form of the Singapore Injunction. Given the length and purported breadth of the K2 investigation, the documents underlying the K2 investigation are relevant insofar as they may contain exculpatory information Mr. Batbold could use in any potential application to set aside the Singapore Injunction and, in the event that the Stay Order is lifted, his defence in the Singapore Proceedings.

9. K2 is not a participant to the Singapore Proceedings, and the Singapore Court thus would not have jurisdiction to compel the production of evidence from those entities.

### THE HIGH COURT OF THE REPUBLIC OF SINGAPORE WILL LIKELY CONSIDER EVIDENCE OBTAINED PURSUANT TO SECTION 1782

10. Mr. Batbold would be permitted to submit further evidence in any application to lift the Stay Order and/or to set aside the Singapore Injunction. Further, should the Stay Order be lifted in the future, Mr. Batbold would be permitted to submit evidence in the Singapore Proceedings. The Singapore Court in my experience is amenable to accepting evidence procured through United States discovery mechanisms, including Section 1782. Such evidence can be admissible, depending on its form. To my knowledge, there are no laws or policies that would prevent the Singapore Court from considering the evidence obtained through Section 1782, and a request for discovery would not circumvent any proof-gathering restrictions in Singapore. Moreover, the discovery sought here would not be barred by any privilege under Singaporean law,

should that law apply. Indeed, under Singaporean law, factual documents undergirding investigations are not privileged, even if investigations are conducted at the direction of counsel.

11. Therefore, I have no basis at this juncture to believe the Singapore Court would reject the evidence requested by Mr. Batbold under Section 1782.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 5, 2021

The Republic of Singapore

Yufei Wang