UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF SUKHBAATAR BATBOLD FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782,<br><br>*Petitioner*. | Case No. __21-mc-218__ |

**DECLARATION OF PATRICK DORIS IN SUPPORT OF SUKHBAATAR BATBOLD'S *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

I, Patrick Doris, declare as follows:

### INTRODUCTION

1. I am currently a Partner at the law firm Gibson, Dunn & Crutcher UK LLP, based in London, England, in the United Kingdom. I was admitted as a solicitor in England and Wales in 1999. I act as counsel to Sukhbaatar Batbold in proceedings currently pending in the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (QBD) (the "High Court"). I submit this Declaration in support of Mr. Batbold's Application for an Order Seeking Discovery Pursuant to 28 U.S.C. Section 1782 (the "Application") permitting him to issue a subpoena for the production of documents and deposition testimony from K2 Intelligence or K2 Integrity (collectively "K2").

2. Unless otherwise stated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by Mr. Batbold and/or professionals retained by Mr. Batbold, and upon my review of relevant documents, including the proposed subpoenas. If called as a witness, I could and would testify competently regarding the information set forth herein.

## THE LONDON PROCEEDING

3. On 17 November 2020, an action was filed in the High Court against Mr. Batbold, among other persons. The action was purportedly brought in the name of three claimants purportedly represented by King & Spalding LLP: the Agency for Policy Coordination on State Property of Mongolia; the Erdenet Mining Corporation; and Erdenes Oyu Tolgoi LLC. The purported claimants alleged that Mr. Batbold owned property in London through proxies, and applied for a freezing injunction against him on the basis of that alleged ownership of property in London, in aid of a foreign proceeding then pending in Mongolia. Attached hereto as **Exhibit A** is a true and correct copy of the application filed in the London proceedings. The application was heard at a hearing in private without notice to Mr. Batbold, at which the claimants succeeded in obtaining that freezing injunction (the "Freezing Injunction"). Their application for that injunction was based in part on affidavits submitted by Jules Kroll, which recounted an investigation conducted by K2 Intelligence ("K2"). K2 is not a named participant to the proceedings against Mr. Batbold in London.

4. By the Freezing Injunction, the High Court ordered Mr. Batbold (on pain of contempt) to provide information disclosing, *inter alia*, all assets in England and Wales, and to confirm the same on affidavit, each of which Mr. Batbold duly did. In that affidavit, Mr. Batbold swore under penalty of perjury that he had no assets in England and Wales. On 16 December 2020, Mr. Batbold and purported claimants entered into a Consent Order, attached hereto as **Exhibit B**, providing that the Freezing Injunction should continue in place until further order from the High Court. This Consent Order was made explicitly on the basis that it is without prejudice to any arguments Mr. Batbold (or any other respondent) may wish to make, including in respect of jurisdiction, to the effect that the Freezing Injunction should not have been granted and/or should be discharged or varied, and that there be liberty to apply to the High Court

generally in relation to the Consent Order itself, and/or to vary or discharge the Freezing Injunction. As such, Mr. Batbold has reserved the right to apply to the High Court to seek to lift the Freezing Injunction imposed on him.

## THE DISCOVERY SOUGHT IS RELEVANT TO THE LONDON PROCEEDING

5. I understand that Mr. Batbold is requesting discovery in New York that would enable him to prepare a challenge to the Freezing Injunction in London. Specifically, Mr. Batbold seeks to introduce evidence of the (a) sources of funding for the K2 investigation that undergirded the without notice application for the Freezing Injunction—including whether that investigation was on contingency; (b) the identity of the party or parties who authorized the K2 investigation and retained K2's services; and (c) documents or information in K2's possession uncovered over the course of its investigation into Mr. Batbold.

6. This evidence is relevant to the London proceedings for multiple reasons. *First*, uncovering the sources of funding for the K2 investigation, and by extension the global litigation advanced against Mr. Batbold, as well as the identity of the parties who provided the authority (or purported authority) for the investigation could aid Mr. Batbold should he wish to lift or vary the Freezing Injunction. The High Court's decision to issue the Freezing Injunction was made in its discretion, based on the record the purported claimants put before it during a without notice hearing at which they owed duties to the Court to fully and frankly to disclose and fairly present all matters material to its decision. If the High Court were to learn the true identities of the parties responsible for the K2 investigation and the global litigation against Mr. Batbold—and, in particular, if it proves to be the case, to learn that the global proceedings were initiated as part of a political disinformation campaign against Mr. Batbold—it could inform the High Court's opinion as to whether the Freezing Injunction should be discharged or discontinued. The High

3

Court may very well decide it was inappropriate for its injunctive jurisdiction in support of foreign proceedings to be used as part of what might be a global effort to defame and discredit Mr. Batbold for political purposes, or in support of proceedings commenced without proper authority from the named claimants.

      7.      *Second*, Mr. Batbold seeks documents from K2's years-long investigation so that he may challenge the relief granted against him in the London proceedings. The Kroll affidavits filed in London provide the purported facts that were relied upon by the claimants and used to justify the need for relief sought and obtained on a without notice basis. Given the length and purported breadth of the K2 investigation, the documents underlying the K2 investigation are relevant insofar as they may contain exculpatory information that Mr. Batbold could use in the London proceedings to challenge the evidentiary basis on which the Freezing Injunction was sought. For example, Mr. Batbold's position is that he owns no assets in England and Wales. One of the other respondents has provided affidavit evidence which is consistent with Mr. Batbold's evidence, to the effect that the other respondent is the sole legal and beneficial owner of a company which owns an apartment in London. The purported claimants allege that that respondent is a proxy of Mr. Batbold and that the apartment still in fact belongs to Mr. Batbold. If they had evidence consistent with the evidence of Mr. Batbold and the other respondent in question, the failure to present that evidence to the court would have been in breach of the duty of full and frank disclosure, and may justify discharge of the injunction. That evidence may in any case bear on the appropriateness, justice, and convenience of maintaining the Freezing Injunction, particularly in circumstances where Mr. Batbold has deposed that—and contrary to the premise on which the injunction was granted—he has no assets in England.

### THE HIGH COURT OF JUSTICE WILL LIKELY CONSIDER EVIDENCE OBTAINED PURSUANT TO SECTION 1782

8. I understand that Mr. Batbold intends to use the evidence granted pursuant to Section 1782 in (among others) the London proceedings. As a Defendant in London and Respondent to the Freezing Injunction, Mr. Batbold is permitted to submit evidence in the case, should he seek to lift the Freezing Injunction imposed against him.

9. In my experience, the High Court is amenable to accepting evidence procured through United States discovery mechanisms, including Section 1782. To my knowledge, there are no laws or policies that would prevent the High Court from admitting and giving due weight to evidence obtained through Section 1782, and a request for discovery would not in the circumstances of this case circumvent any English proof-gathering restrictions. In *South Carolina Insurance Co. v Assurantie Maatschappij de Zeven Provincien N.V.* [1987] AC 24, the Judicial Committee of the House of Lords (then the highest appellate court in England) considered the issue directly, and held that, in general, a party to an English proceeding could make use of the Section 1782 discovery mechanism in order to obtain evidence for use in the English courts; and that it would be otherwise only if recourse to such mechanism was in the circumstances an abuse of the English Court's process or otherwise unconscionable. I am not aware of any fact that would take the present Application outside the general rule, or cause it to be regarded by the English Court as abusive or unconscionable.

10. Based on the current facts as I understand them, the discovery sought here would not be barred by any privilege under English law, should English law apply. Litigation privilege in English law attaches to communications between parties or their attorneys and third parties made for the purpose of obtaining information or advice in connection with existing or contemplated litigation, but only where: (a) litigation is in progress or in reasonable

contemplation at the time of the communication; (b) the communications have been made for the sole or dominant purpose of conducting that litigation; and/or (c) the litigation is adversarial, not investigative or inquisitorial. As such, under English law, factual documents undergirding investigations are not, *ipso facto*, privileged, even if investigations are conducted at the direction of counsel. And in any event, I have seen no indication that the K2 investigation was directed by counsel, nor that the investigation—which purportedly commenced more than two years before the litigation against Mr. Batbold was brought—was undertaken for the purpose of advancing contemplated litigation.

11. Therefore, I have no basis to believe the High Court would reject the evidence—let alone all the evidence—requested by Mr. Batbold under Section 1782.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:      3 March 2021

Location:   London, England, United Kingdom

Patrick Doris