**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE APPLICATION OF SUKHBAATAR
BATBOLD FOR AN ORDER PURSUANT TO
28 U.S.C. § 1782,

               *Petitioner*.

Case No. _21-mc-2_18

---

**DECLARATION OF BRIAN WILLIAM GILCHRIST IN SUPPORT OF SUKHBAATAR**
**BATBOLD'S *EX PARTE* APPLICATION**
**FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

I, Brian William Gilchrist, declare as follows:

**INTRODUCTION**

1.      I am currently a Partner at the law firm Gibson, Dunn & Crutcher LLP, based in

Hong Kong.  I was admitted as a solicitor in England and Wales in 1991, and as a Solicitor of the

High Court of Hong Kong in 1995.  I act as counsel to Sukhbaatar Batbold in proceedings

currently pending in the High Court of the Hong Kong Special Administrative Region of the

People's Republic of China, and submit this Declaration in support of Mr. Batbold's Application

for an Order Seeking Discovery Pursuant to 28 U.S.C. Section 1782 (the "Application")

permitting him to issue a subpoena for the production of documents and deposition testimony

from K2 Intelligence or K2 Integrity (collectively "K2").

2.      Unless otherwise stated, all facts set forth in this Declaration are based upon my

personal knowledge, information supplied to me by Mr. Batbold and/or professionals retained by

Mr. Batbold, and upon my review of relevant documents, including the proposed subpoena.  If

called as a witness, I could and would testify competently regarding the information set forth

herein.

## THE HONG KONG PROCEEDING

3.     On November 10, 2020, three entities purporting to be plaintiffs (the "Plaintiffs")

filed an *ex parte* application in the High Court of the Hong Kong Special Administrative Region,

Court of First Instance, seeking injunctive relief against Mr. Batbold, among other individuals.

The Plaintiffs were represented by Zhong Lun Law Firm (which confirmed that they take

instructions from Sarah Yasmin Walker, a solicitor of the Senior Courts of England & Wales and

a Partner of the London office of King & Spalding), and included the Agency for Policy

Coordination on State Property of Mongolia, the Erdenet Mining Corporation, and Erdenes Oyu

Tolgoi LLC.  The Plaintiffs (or those who purportedly act on their behalf) alleged that Mr.

Batbold owned property in Hong Kong through a series of proxies, and sought to freeze that

property in aid of a foreign proceeding then pending in Mongolia (the "Mongolian Proceeding").

The action was formally commenced by Originating Summons filed with the Hong Kong Court

on November 23, 2020.  Attached hereto as **Exhibit A** is a true and correct copy of the

Originating Summons filed in the Hong Kong proceeding, obtained by way of a public court file

search.

4.     The Plaintiffs' motion for a freezing injunction was based in part on affidavits

submitted by Jules Kroll, chairman and co-founder of K2 based in New York, which recounted

an investigation conducted by K2.  Whilst the Plaintiffs succeeded in obtaining the *ex parte*

injunction on their second attempt before the Hong Kong Court, presiding Justice Linda Chan,

who initially heard the motion on November 11, 2020, refused to grant the injunction and

expressed concerns over the voluminous materials submitted to the Court and the difficulty in

comprehending the Plaintiffs' claim and basis for the injunctive relief sought.

5.      In particular, during that hearing, Justice Chan noted that the "inference" the Plaintiffs were asking to be drawn was "speculation to me", and that the Plaintiffs presented "no direct evidence to show that [Mr. Batbold] has any connection with" seven of the co-defendants named in the freezing injunction.  Moreover, she observed that the Plaintiffs failed to provide any "roadmap" that would assist the Court in understanding the proxy relationships and the allegations against each of the defendants, and repeatedly expressed dissatisfaction at the voluminous submission on the part of the Plaintiffs that "lump[ed] everything together".  After Justice Chan rejected the request for an *ex parte* injunction, another Judge of the High Court, Justice S.T. Poon on a renewed application on November 23, 2020 awarded preliminary, *ex parte* injunctive relief prohibiting, *inter alia*, Mr. Batbold from removing his assets in Hong Kong up to the value of USD 30 million.

6.      In the *ex parte* order, the Court directed Mr. Batbold to submit an affidavit disclosing all assets of an individual value of HK$100,000 or more that he owns in Hong Kong. Mr. Batbold complied with the Court's order, and has sworn an affidavit under penalty of perjury that he had no assets of an individual value of HK$100,000 or more in Hong Kong.

7.      The freezing injunction is currently in place against Mr. Batbold, and he retains the right to seek to lift the freezing injunction, including by submitting his own evidence to the Court for its consideration.

**THE DISCOVERY SOUGHT IS RELEVANT TO THE HONG KONG PROCEEDING**

8.      I understand that Mr. Batbold is requesting discovery in New York that will enable him to prepare his defenses in Hong Kong.  Specifically, Mr. Batbold seeks to introduce evidence of the (a) sources of funding for the K2 investigation that supported the *ex parte* request for a freezing injunction, which the Hong Kong Court granted, including whether the K2

investigation was on contingency; (b) the identity of the party or parties who authorized the K2

investigation and retained K2's services; and (c) documents or information in K2's possession

uncovered or created over the course of its investigation into Mr. Batbold.

9.        This evidence is relevant to the Hong Kong proceeding for multiple reasons.

*First*, the sources of funding for the K2 investigation, and by extension the global litigation

advanced against Mr. Batbold, as well as the identity of the parties who commissioned K2 to

pursue the investigation would be highly probative for the High Court of Hong Kong.  The

Court's decision to issue a freezing order was done so in its discretion, based on the record the

Plaintiffs put before it during an *ex parte* proceeding.  If the High Court of Hong Kong were to

learn the true identities of the parties responsible for the K2 investigation and the global

litigation against Mr. Batbold—and to possibly learn that the global proceedings were initiated as

part of a political disinformation campaign against Mr. Batbold—it could inform the Court's

opinion as to whether the *ex parte* relief was warranted in the first instance and whether it should

be lifted.  If the Hong Kong proceeding was commenced as part of a global effort to defame and

discredit Mr. Batbold for political purposes alone, it would be an abuse of Court process.

10.        *Second*, Mr. Batbold seeks documents from K2's years'-long investigation so that

he may defend himself in the Hong Kong proceeding.  The Kroll affidavits, filed in Hong Kong,

provide the purported facts that were relied upon by the Plaintiffs and used to justify the need for

*ex parte* relief and to bring an action against Mr. Batbold in the first place.  Given the length and

purported breadth of the K2 investigation, the documents underlying the K2 investigation are

relevant insofar as they may contain exculpatory information Mr. Batbold could use in the Hong

Kong proceeding in his defense.

11.     K2 is not a participant to the Hong Kong proceeding against Mr. Batbold, and thus in the ordinary course it would not be compelled to produce evidence in the Hong Kong proceeding.  Further, whilst Jules Kroll of K2 has sworn affidavits in support of the Plaintiffs' injunction application in Hong Kong, neither he nor K2 itself could be compelled to produce evidence in the Hong Kong proceeding as they reside out of the jurisdiction.

**THE HIGH COURT OF THE HONG KONG SPECIAL ADMINISTRATIVE REGION WILL LIKELY CONSIDER EVIDENCE OBTAINED PURSUANT TO SECTION 1782**

12.     I understand that Mr. Batbold intends to use the evidence granted pursuant to Section 1782 in the Hong Kong proceeding.  As a Defendant in Hong Kong, Mr. Batbold is permitted to submit evidence in the case, both to defend on its merits and should he seek to lift the freezing injunction imposed against him.

13.     In my experience, the High Court of Hong Kong is amenable to accepting evidence procured through United States discovery mechanisms, including Section 1782.  Such evidence can be admissible, depending on its form.  To my knowledge, there are no laws or policies that would prevent the High Court of Hong Kong from considering the evidence obtained through Section 1782, and a request for discovery would not circumvent any proof-gathering restrictions in Hong Kong.

14.     Moreover, the discovery sought here would not be barred by any privilege under the law in Hong Kong, should that law apply.  Indeed, under the law in Hong Kong, factual documents supporting investigations are ordinarily not privileged.

15.     Therefore, I have no basis to believe the High Court of Hong Kong would reject the evidence requested by Mr. Batbold under Section 1782.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 4, 2021

Hong Kong Special Administrative Region of the People's Republic of China

Brian William Gilchrist