# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF SUKHBAATAR
BATBOLD FOR AN ORDER PURSUANT TO 28
U.S.C. § 1782,

*Petitioner.*

Case No. ___21-mc-218___

## DECLARATION OF Z. SUKHBAATAR IN SUPPORT OF SUKHBAATAR BATBOLD'S *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

I, Z. Sukhbaatar, declare as follows:

### INTRODUCTION

1.  I am currently the Managing Partner of Mongol Advocate Law Firm, based in Mongolia. I was admitted to practice law in Mongolia in 2003. I act as counsel to Sukhbaatar Batbold in proceedings currently pending in the Bayanzurkh District Civil Court of First Instance in Mongolia (the "Mongolian Proceeding").

2.  I submit this Declaration in support of Mr. Batbold's Application for an Order Seeking Discovery Pursuant to 28 U.S.C. Section 1782 (the "Application") permitting him to issue a subpoena for the production of documents and deposition testimony from K2 Intelligence or K2 Integrity (collectively "K2").

3.  Unless otherwise stated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by Mr. Batbold and/or professionals retained by Mr. Batbold, and upon my review of relevant documents, including the proposed subpoenas. If called as a witness, I could and would testify competently regarding the information set forth herein.



*Scanned by TapScanner*

## THE MONGOLIAN PROCEEDING

4.      On October 14, 2020, the Capital City Prosecutor's Office (the "Prosecutor")
brought a civil action against Mr. Batbold in the Bayanzurkh District Civil Court of First
Instance in Mongolia purportedly on behalf of plaintiffs Agency for Policy Coordination on State
Property of Mongolia, Erdenet Mining Corporation, and Erdenes Oyu Tolgoi LLC (the
"Purported Plaintiffs"). It is my understanding, however, that each of these entities have
confirmed in writing that they did not authorize the Mongolian Proceeding or indeed any other
lawsuit filed against Mr. Batbold around the globe. The Mongolian Cabinet Secretariat has
confirmed the same. The Cabinet Secretariat is the administrative agency that runs the
Mongolian government, including the Agency for Policy Coordination on State Property of
Mongolia.

5.      Until recently, the Mongolian Proceeding was designated by high-level
Mongolian government officials as "top secret," with the result that Mr. Batbold has been denied
access to the complete filings in the case. This is a blatant violation of Mongolian law which
guarantees civil defendants the right to familiarize themselves with the demands, explanations,
and evidence of opposing parties in civil matters. Because Mr. Batbold has been unable to see
the filings against him, he has also been prevented from exercising his right to submit evidence
which is set forth in Article 25.1 of the Civil Procedure Law of Mongolia, in his own defense
which was required to be filed due to Article 72.2 of the Civil Procedure Law of Mongolia
without familiarizing with case materials. Mr. Batbold has been denied even the opportunity to
review the case originating order imposed in the Mongolian Proceeding.

6.      Moreover, there appears to be no legitimacy to the top secret designation. Under
Mongolian law, top secret designations are justified when the release of information may cause
exceptionally grave consequences to national interests *and* the weakening of the defense

2

Scanned by TapScanner

capacity. No such standard is met here—particularly not where the Purported Plaintiffs and their counsel have been levying these "top secret" allegations publicly against Mr. Batbold in proceedings around the world and in the international press.

7.    I understand that recently the top secret designation has been removed from some case materials, the remaining of them are still under the top secret label. An independent expert concluded that there were no state secrets in some of the case filings. Therefore Mr. Batbold and his counsel still have not yet to receive access to some of the case filings in the Mongolian Proceeding.

## THE REQUESTED DISCOVERY IS RELEVANT TO THE MONGOLIAN PROCEEDING

8.    I understand that Mr. Batbold is requesting discovery in New York that will enable him to prepare his defenses in the Mongolian Proceeding. Specifically, Mr. Batbold seeks to introduce evidence of the (a) sources of funding for the K2 investigation and the global litigation against him; (b) the identity of the party or parties who authorized the K2 investigation and retained K2's services; and (c) exculpatory documents in K2's possession uncovered over the course of its investigation into Mr. Batbold.

9.    This evidence is relevant in the Mongolian proceeding for multiple reasons.

10.    *First,* uncovering the sources of funding for the K2 investigation, and by extension the global litigation advanced against Mr. Batbold, as well as the identity of the parties who provided the authority for the investigation could provide substantial defenses to Mr. Batbold in the Mongolian Proceeding. For instance, depending on how the investigation was funded—including whether it was on contingency—could aid Mr. Batbold in proving the investigation was improperly motivated. Similarly, the identities of who in Mongolia retained

3

Scanned by TapScanner

K2 and commenced its investigations could aid Mr. Batbold in discrediting the K2 report, which appears critical to the claimants' case.

11.     *Second*, Mr. Batbold seeks non-privileged documents from K2's years'-long investigation so that he may rebut the allegations he believes to be pending against him in Mongolia. While Mr. Batbold has not been able to review the Mongolian Proceeding some of the case file, it seems likely that the Mongolian Proceeding was initiated in reliance upon the findings of the K2 investigation. The text of the complaint from the Mongolian Proceeding, filed as an exhibit in New York State Supreme Court, suggests as much. Given the length and purported breadth of the K2 investigation, the documents underlying the K2 investigation are relevant insofar as there may be exculpatory information Mr. Batbold could use in the Mongolian Proceeding in his defense.

12.     This discovery is highly relevant to Mr. Batbold's anticipated defenses and strategy in the Mongolian Proceeding, but the Mongolian courts do not have jurisdiction over non-party K2. Without the aid of the federal court in New York, Mr. Batbold may not be able to access this information.

## MONGOLIAN COURTS WILL LIKELY CONSIDER EVIDENCE OBTAINED THROUGH SECTION 1782

13.     I understand that Mr. Batbold intends to use the evidence granted pursuant to Section 1782 in the Mongolian Proceeding.

14.     The Mongolian Proceeding is adjudicative in nature, and the Mongolian court will make legal and factual determinations after considering the evidence before it. As a defendant in the proceeding, Mr. Batbold is entitled to supplement the evidentiary record at any time before the hearing on the merits. Accordingly, the Mongolian court will be receptive to relevant evidence submitted for its consideration.

4

Scanned by TapScanner

15.     To my knowledge, there are no laws or policies that would prevent the Mongolian court from considering the evidence obtained through Section 1782, and a request for discovery would not circumvent any Mongolian proof-gathering restrictions. Moreover, the discovery sought here would not be barred by any privilege under Mongolian law.

16.     Therefore, I have no basis to believe the Mongolian court would reject the evidence requested by Mr. Batbold under Section 1782.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  March 4, 2021

Ulaanbaatar, Mongolia

Z. Sukhbaatar

Scanned by TapScanner