# Tong Exhibit C

IN THE GENERAL DIVISION OF
THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

**[2021] SGHC 50**

Suit No 1145 of 2020 (Summons No 5541 of 2020)

Between

(1) The Agency for Policy Coordination on State Property of Mongolia
(2) Erdenet Mining Corporation LLC
(3) Erdenes Oyu Tolgoi LLC

... *Plaintiffs*

And

(1) Batbold Sukhbaatar
(2) Cheong Choo Young
(3) Kim Hak Seon
(4) Cliveden Trading AG
(5) Eoin Barry Saadien
(6) Everest VC Pte Ltd
(7) Ponduver Pte Limited

... *Defendants*

# JUDGMENT

[Civil Procedure] — [Rules of court]

[Agency] — [Implied authority of agent] — [Warrant]

This judgment is subject to final editorial corrections approved by the court and/or redaction pursuant to the publisher's duty in compliance with the law, for publication in LawNet and/or the Singapore Law Reports.

# The Agency for Policy Coordination on State Property of Mongolia and others
## v
## Batbold Sukhbaatar and others

**[2021] SGHC 50**

General Division of the High Court — Suit No 1145 of 2020 (Summons No 5541 of 2020)
Philip Jeyaretnam JC
22 January, 5 February 2021

26 February 2021                                                                 Judgment reserved.

**Philip Jeyaretnam JC:**

**Introduction**

1       Order 64 Rule 7 of the Rules of Court (Cap 322, R 5, 2014 Rev Ed) requires every solicitor representing a party in any cause or matter to obtain from that party or its duly authorised agent a warrant to act, either generally or in that cause or matter. In these proceedings, the foreign entities named as plaintiffs have not themselves given authority to anyone to execute a warrant to act or otherwise to instruct the solicitor. Instead, a law officer of the government of that foreign country asserts the right to bring these proceedings in the names of the plaintiffs, and it is that law officer who has authorised the Singapore solicitor to do so, via an intermediary solicitor. Thus, the question arises whether O 64 r 7 of the Rules of Court requires the party itself to give consent, or whether

proceedings can be maintained in the name of a party for whom another person has been given the right to act under the law of that country.

**Procedural history**

2       The first plaintiff is an agency of the Government of Mongolia, the Agency for Policy Coordination on State Property (the "Agency"). The Agency owns 100% of Erdenet Mining Corporation LLC ("Erdenet Mining"), a company incorporated in Mongolia, which is the second plaintiff. The second plaintiff holds the Mongolian State's interest in the Erdenet copper mine. The third plaintiff, Erdenes Oyu Tolgoi LLC ("Erdenes OT"), is also owned by the Government of Mongolia. It holds the Mongolian State's interest in a copper and gold mine, known as Oyu Tolgoi.[1]

3       It is not however any of the plaintiffs that has itself pursued this matter. Instead, the Metropolitan Prosecutor's Office of Mongolia ("MPOM") filed a civil case on behalf of the plaintiffs against the first defendant and others before the Bayanzurkh District Civil Court of First Instance in Mongolia, initiated on 14 October 2020, with the case being opened on 28 October 2020 by Judicial Decree No. 101/SHZ2020/20219 (the "Mongolian Claim").[2] This has been followed by proceedings elsewhere on behalf of and in the name of the plaintiffs.

4       MPOM's core complaint alleges that the first defendant, who was Prime Minister of Mongolia from October 2009 to August 2012, has made substantial secret profits from contracts awarded in relation to each of the Erdenet and Oyu

---

[1]    Statement of Claim at [1]–[2].

[2]    First affidavit of Nyamdorj Sharavdorj at [38].

*The Agency for Policy Coordination on State*                   [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

Tolgoi mines. On 27 November 2020 the plaintiffs obtained a freezing order in these proceedings in support of the Mongolian Claim against the defendants. The fifth defendant, one Eoin Barry Saadien, is a director and one-third shareholder of the sixth defendant, Everest VC Pte Ltd ("Everest VC"), a company incorporated in Singapore. Neither of them are defendants to the Mongolian Claim. They filed an application to discharge the injunction against them on 18 December 2020.

5      When the discharge application first came on for hearing before me on 22 January 2021, counsel for the fifth and sixth defendants, Mr Lawrence Quahe, pressed to have the injunction discharged on a preliminary point that the solicitors for the plaintiffs, Rev Law LLC ("Rev Law") had not produced a warrant to act from the plaintiffs or their duly authorised agent upon being asked to do so, and had only produced a letter of engagement from a London-based solicitor. The point made was that as a result of the lack of authority the undertaking as to damages that was provided as a condition for the issue of the injunction purportedly by the plaintiffs was not in fact given, and in the absence of an undertaking as to damages the injunction had to be discharged.

6      Counsel for the plaintiffs sought a short adjournment for the purpose of adducing additional evidence. I allowed the adjournment, as I considered that where a solicitor's authority to act is put in issue, there must be both a factual inquiry into the existence of the authority as well as an opportunity given for the party purportedly represented by the solicitor to adopt or disclaim the proceedings. An example of subsequent adoption, albeit by power of attorney, can be found in the case of *Syed Salim Alhadad & Others v Shaika Amnah* [1998] 3 SLR(R) 572, where Justice Chao Hick Tin discussed the English cases supporting the proposition that unauthorised institution of legal proceedings

3

*The Agency for Policy Coordination on State*                    [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

may be ratified, in accordance with the law of agency. The preliminary point of Rev Law's authority returned for hearing before me on 5 February 2021.

7    In the interim, the plaintiffs filed two affidavits, that together have fully elucidated the basis on which the plaintffs' names have been used in these proceedings. One of them is the third affidavit of Sarah Yasmin Walker, a solicitor of the Senior Courts of England & Wales and a partner of the law firm King & Spalding International LLP ("K&S"), based in its London office. The other is the first affidavit of Nyamdorj Sharavdorj, who is the Prosecutor General of MPOM.

**The plaintiffs' position**

8    With these two affidavits, it is clear that no reliance is placed on authority from any agent appointed by the plaintiffs themselves. Nor is there any reliance on any act of adoption or ratification by any of the plaintiffs. The chain of authority ends with the prosecutor of Mongolia, who is said to have the right under Mongolian law to participate in proceedings outside Mongolia in the names of state organisations, where he considers that there has been a violation of public interest.[3] The links in the chain are as follows:

>(a)    A letter of engagement dated 20 October 2020 addressed by Rev Law to K&S stating their understanding that K&S act for the Government of Mongolia and the three plaintiffs (defined as the Mongolian Claimants), and describing the scope of the engagement as "[r]epresenting the Mongolian Claimants in Singapore court

---

[3]    First affidavit of Nyamdorj Sharavdorj at [26]—[27].

4

*The Agency for Policy Coordination on State*          [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

proceedings for injunctive relief against various parties" and countersigned by Ms Walker;[4]

(b) A letter dated 6 November 2020 signed by one Ts Nasanbat described as the Deputy General Prosecutor and Vice Counsel on Legal Matters in MPOM, referring to the Mongolian Claim and instructing Ms Walker as follows:[5]

> In support of the Mongolian Claim and otherwise, [Ms Walker is] instructed to seek in all relevant courts orders to freeze or injunct (or any other relief necessary to freeze or injunct) any and all assets directly or indirectly/beneficially owned from time to time by the Defendants, including Batbold Sukhbaatar, which are located or held in, or otherwise linked to, the jurisdictions outside of Mongolia as we have agreed upon.

(c) The Law on Prosecutor of Mongolia (adopting the translation provided by Mr Sharavdorj), which by Article 20 is said to entitle the prosecutor to participate in civil proceedings in the name of state organisations on his own initiative, if he deems that the public interest has been violated, and to do so without any power of attorney from those state organisations;[6]

(d) A letter dated 13 October 2020 from Mr Sharavdorj to the First Instance Civil Court of Bayanzurkh District, which is the court hearing

---

[4] Fourth affidavit of Eoin Barry Saadien at pp 144–145.

[5] First affidavit of Nyamdorj Sharavdorj at Tab 13; third affidavit of Sarah Yasmin Walker at Tab 1.

[6] First affidavit of Nyamdorj Sharavdorj at Tab 5.

5

*The Agency for Policy Coordination on State*            [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

the Mongolian Claim, appointing Mr Nasanbat and stating the purpose as:[7]

> … [F]iling of a claim and participating in the civil proceedings in the Section 20.1, 20.3 and 20.4 of the Article 20 of the Law on Prosecutor in regard to state and public interest violation matters occurred whilst exercising state ownership in mining deposits through [the second and third plaintiffs].

9    In addition, Mr Sharavdorj has in his affidavit deposed that "the PGOM [*ie,* the Prosecutor General of Mongolia] has authorised the commencement of proceedings in Singapore"[8] and that K&S "did have, and continues to have, authority to represent the plaintiffs in this proceeding".[9]

**The fifth and sixth defendants' challenge**

10    The fifth and sixth defendants object to the effectiveness of the warrant effected by Ms Walker's countersignature to Rev Law's letter of engagement, because she is not the duly authorised agent of the plaintiffs. At a fundamental level, they contend that O 64 r 7 of the Rules of Court requires the warrant to act to be signed either by the party itself or by its duly authorised agent. Taking the letter of engagement as a warrant to act, it is not signed by any agent appointed by the defendants. There is no authority given by the plaintiffs themselves. Ms Walker cannot then be properly described as the agent of the plaintiffs for the purpose of O 64 r 7 of the Rules of Court.

---

[7]    First affidavit of Nyamdorj Sharavdorj at Tab 10.
[8]    First affidavit of Nyamdorj Sharavdorj at [48].
[9]    First affidavit of Nyamdorj Sharavdorj at [51].

*The Agency for Policy Coordination on State*             [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

11    The fifth and sixth defendants have also referred to a letter dated 27 November 2020 from the Chief Cabinet Secretary of Mongolia to the first defendant. This letter refers to and relies on letters to the Cabinet Secretariat from each of the plaintiffs, in support of its advice that none of the plaintiffs "filed a petition in court, or requested the Capital City Prosecutor's Office to file a petition in court".[10] Thus, they say there is no consent of the plaintiffs for the commencement of these proceedings, and that without consent of the principal there can be no agency.

12    The fifth and sixth defendants additionally contend that any right of MPOM to commence proceedings in the names of the plaintiffs can only be exercised within Mongolia, or alternatively requires as a condition to its exercise that the MPOM itself be a party to those proceedings. Lastly, they contend that the authority to commence proceedings extended in the letter dated 6 November 2020 is limited to proceedings against the defendants to the Mongolian Claim. The fifth and sixth defendants are not defendants to the Mongolian Claim. They have not however denied that the plaintiffs are state organisations within Article 20, nor contended that MPOM does not have the right to maintain the Mongolian Claim (in which MPOM itself participates as a named party, in addition to the plaintiffs).

**Order 64 Rule 7 of the Rules of Court**

13    Order 64 is titled *Change of Solicitor*, but O 64 r 7 is of general application, including where there is no change of solicitor, and provides:

> (1)    Every solicitor representing any party in any cause or matter shall obtain from such party or his duly authorised

---

[10]    Second affidavit of Cheong Choo Young at p 91.

7

*The Agency for Policy Coordination on State*            [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

        agent a warrant to act for such party, either generally or in the said cause or matter.

        (2)    The absence of such warrant shall, if the solicitor's authority to act is disputed, be prima facie evidence that he has not been authorised to represent such party.

14      The wording of O 64 r 7(1) at first sight does indeed appear to envisage that, if the party himself does not execute the warrant, it will be executed by his agent. The language suggests, at least as its paradigm case, the express appointment of an agent by the party, although it is broad enough to include an agent with implied authority. Turning to the next subrule, the consequence outlined in O 64 r 7(2) when there is no such warrant is not that there is no authority for the solicitor to represent the party, but that the absence of the warrant is *prima facie* evidence of the lack of authority. It thus permits authority to be proved by means other than the existence of the warrant to act. Moreover, the language of O 64 r 7(2) is different from that in O 64 r 7(1), in that it no longer refers to any "duly authorised agent" from whom a warrant must be obtained, but to a more general question of "authority to act". While an agent has "authority to act" for his principal, the word "authority" is broader. It is not limited to an agency relationship, as suggested by the phrase "a duly authorised agent" in O 64 r 7(1), and is apt to include having the power or right to act, such as by virtue of a statute. Nonetheless, it can be argued that the language of a secondary rule must be read in the context of the primary rule, so that if the primary rule is limited to duly authorised agents, any reference to authority in the secondary rule must be read as limited to authority under the law of agency. Against that reading would be the interpretation that the phrase "prima facie" in O 64 r 7(2) invites proof of authority to represent the party by evidence generally.

8

*The Agency for Policy Coordination on State*                  [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

15      Ultimately, the interpretation of O 64 r 7 that promotes its underlying purpose or object is to be preferred to one that does not promote that purpose or object: s 9A(1) Interpretation Act (Cap 1, 2002 Rev Ed). As explained in *Tan Cheng Bock v AG* [2017] 2 SLR 850 ("*Tan Cheng Bock*") at [38]–[54], the court's approach comprises three steps: first, the consideration of possible interpretations by reference to the ordinary meaning of the words used, adopting rules and canons of statutory interpretation; second, ascertaining the legislative purpose or object (including where appropriate by reference to extrinsic materials); and then third, bringing these two steps together by comparing the possible interpretations against the ascertained purpose or object and preferring the one which promotes it.

16      At the first step of considering the ordinary meaning of O 64 r 7, there do seem to be two possible interpretations, first that the authority to act is that of an agent, and so must derive from the consent of the party, and secondly that the authority to act may be founded on any basis proper in law, not limited to the law of agency.

17      Turning to the second step of ascertaining the purpose or object of O 64 r 7, neither counsel referred me to any extrinsic material, or to any history of the rule. Nonetheless, the purpose of the rule is clear. It is to ensure that when a solicitor takes steps in proceedings on behalf of a named party, both the court and the opposing party can attribute such steps to the named party, and hold the named party bound by and responsible for them. It is an essential feature of the court process to accord solicitors a role as officers of the court in the administration of justice. The work of the courts depends on being able to rely on solicitors as duly representing their clients.

9

18      This purpose of the Rule is not promoted by limiting the authority of solicitors to that derived from consent of the named party, given that there are recognised examples of a solicitor having authority to act for a party even without their actual consent. Without being exhaustive, three examples may be mentioned. The first example is that of a party that lacks capacity under s 4 of the Mental Capacity Act (Cap 177A, 2010 Rev Ed), whether this is so at the commencement of the proceedings or arises in the course of it. Someone else may give consent instead, deriving their right to do so as the donee of a lasting power of attorney (as described in s 11 of the Mental Capacity Act) or from a court order, in the case of a deputy appointed under s 20 of the Mental Capacity Act. While the donee of a lasting power of attorney can be said to be an agent whose authority endures by virtue of statute despite the principal's lack of capacity, the deputy is not best described as an agent of the person lacking capacity, nor does actual consent of that person feature. A solicitor acting for a party lacking capacity on the instructions of that person's deputy certainly has authority to represent that party.

19      The second example is where a person is entitled to sue in the name of another by virtue of the law of subrogation. The subrogee may sue in the name of the subrogor without the subrogor's consent, and may appoint solicitors to represent the subrogor as the named party. Again, the solicitor has authority to represent the named party regardless of the absence of consent.

20      The third example would be where a member of a company obtains the leave of court under s 216A of the Companies Act (Cap 50, 2006 Rev Ed) to sue in the name of and on behalf of the company in which he is a member. This provision precisely exists for the situation where the company itself has chosen not to sue. Incidental orders may be given, authorising the member to control

the conduct of the proceedings. If proceedings are then commenced in the name of the company, the solicitor instructed by the member is certainly authorised to represent the company.

21     This third example is particularly instructive, because it is not only members of a company who can be complainants applying to bring an action in the name of the company; so too can the Minister, in the case of a declared company under Part IX of the Companies Act, or indeed any other person that the Court accepts to be a proper person: see s 216A(1) Companies Act. It is worth reproducing s 230 of the Companies Act:

> **Power to declare company or foreign company**
>
> **230.** The Minister may by order declare that a company or foreign company is a company to which this Part applies if he is satisfied —
>
>> (*a*) that a prima facie case has been established that, for the protection of the public or the shareholders or creditors of the company or foreign company, it is desirable that the affairs of the company or foreign company should be investigated under this Part;
>>
>> (*b*) that it is in the public interest that allegations of fraud, misfeasance or other misconduct by persons who are or have been concerned with the formation or management of the company or foreign company should be investigated under this Part;
>>
>> (*c*) that for any other reason it is in the public interest that the affairs of the company or foreign company should be investigated under this Part; or
>>
>> (*d*) in the case of a foreign company, that the appropriate authority of another country has requested that a declaration be made pursuant to this section in respect of the company.

22     Thus, under Singapore law, it is possible for the Singapore government to bring proceedings in the name of a company, local or foreign, if the Minister first makes a declaration, for example that it is in the public interest that its

11

*The Agency for Policy Coordination on State*            [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

affairs be investigated, and thereafter with the leave of Court under Companies Act s 216A. Such proceedings would not depend on first obtaining the consent of that declared company.

23      I therefore conclude that consent of the named party is not a prerequisite, whether by virtue of O 64 r 7 or otherwise. A solicitor representing that party may derive his authority from a person who has the right to sue in the name of that party under the general law, whether the common law or a statute, even though the person giving instructions to the solicitor does not have the consent of the named party to do so.

24      Returning to O 64 r 7, the solicitor in such a case should obtain a warrant to act from the person having the right to sue in the name of the party, or from a duly authorised agent of that person. In the absence of such a warrant, the solicitor may still prove by other evidence that he has authority to represent the named party.

25      There is a further aspect to be considered, which is that the right to sue in the names of the plaintiffs does not derive from Singapore law but from the law of Mongolia. However, this aspect does not help the fifth and sixth defendants. The plaintiffs are Mongolian entities, and, under trite principles of the conflict of laws, questions of capacity fall to be determined under Mongolian law. For example, the decision-making organs of a corporate body may differ under different laws, and the Singapore court would first look to the law of the country in which that body is incorporated for the purpose of determining whether a decision or action is attributable to that body: see *Oro Negro Drilling Pte Ltd and others v Integradora de Servicios Petroleros Oro Negro SAPI de CV and others and another appeal (Jesus Angel Guerra Mendez, non-party)*

12

*The Agency for Policy Coordination on State*            [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

[2020] 1 SLR 226 at [88]. If MPOM has the right to sue in the names of the plaintiffs under Mongolian law, there is no reason for this court not to recognise that right.

**Article 20 of the Mongolian Law on Prosecutor**

26      Whether there is indeed such a right requires consideration of the further objections of the fifth and sixth defendants. The first two objections, namely that Article 20 does not authorise proceedings outside Mongolia, or that Article 20 only authorises proceedings if MPOM also appears as a named party, require consideration of Article 20, the Mongolian Claim and what Mr Sharavdorj has deposed in his affidavit.

27      Mr Sharavdorj is a Mongolian lawyer who is the Prosecutor General of MPOM. He was appointed on 1 October 2019 by the order of the Prosecutor General of Mongolia, who heads the Prosecutorial Organisation of Mongolia of which MPOM is a part.[11] He has explained and also exhibited the relevant provisions of the Law on Prosecutor, including Article 20.

28      Article 20.1 of the Law on Prosecutor provides that:[12]

> The prosecutor shall participate in administrative and civil proceedings as a party or a third party at the request of the state organization if he/she deems that the state interest has been violated or, if he/she deems that the public interest has been violated, at the request of the state organization or on his/her own initiative.

29      Article 20.4 of the Law on Prosecutor provides that:[13]

---

[11] First affidavit of Nyamdorj Sharavdorj at [10]–[12].

[12] First affidavit of Nyamdorj Sharavdorj at Tab 5.

[13] First affidavit of Nyamdorj Sharavdorj at Tab 5.

13

*The Agency for Policy Coordination on State*            [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

> The prosecutor shall participate without a power of attorney in cases where he/she carries out activities to represent and protect the state and public interests on his/her own initiative.

30    Mr Sharavdorj also exhibited Articles 3, 5 and 7 of the Law on Prosecutor. Article 3 is a statement of principles of the prosecutor's activity and includes the principles of protecting the public interest and being independent. Article 5 makes the protection of the public interest a duty, including prevention of its violation and the taking of remedial action. Article 7 enshrines the independence of the prosecutor, and prohibits others, including officials, from interfering with, influencing or pressuring the prosecutor.[14]

31    Mr Sharavdorj has stated clearly that "the request of the Plaintiffs' management, shareholders, or boards (or that of the cabinet secretary) is *not* needed for the PGOM (or constituent entity) to act where the PGOM considers that the public interest has been violated, as in this case." [emphasis in original].[15] He has also stated that "there is no reason why the sovereign State of Mongolia should be the plaintiff in this action rather than the Plaintiffs"[16] and that the fifth defendant "has not pointed to any provision of Mongolian law that requires the PGOM itself to be a party to the proceedings in which it represents state entities."[17]

32    Mr Quahe argues that the reference to civil proceedings in Article 20.1 must be limited to proceedings in Mongolia. However, he has not adduced any evidence from a Mongolian lawyer to support this assertion, and has not sought

---

[14]    First affidavit of Nyamdorj Sharavdorj at Tab 5.

[15]    First affidavit of Nyamdorj Sharavdorj at [47].

[16]    First affidavit of Nyamdorj Sharavdorj at [49].

[17]    First affidavit of Nyamdorj Sharavdorj at [50].

14

*The Agency for Policy Coordination on State*                      [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

any adjournment to do so. Indeed, his position is that I should proceed to make my decision based on the available evidence. He has contended that I should draw an adverse inference under s 116(g) of the Evidence Act (Cap 97, 1997 Rev Ed) that Mr Sharavdorj's instrument of appointment would contain a limitation of his powers to proceedings in Mongolia. I decline to draw any such adverse inference. To draw an adverse inference from the non-production of a document, there must, among other requirements, be some basis for suggesting that what is urged upon the court by way of inference might indeed be the case in point of fact. There is no basis for the fifth and sixth defendants to suggest that the instrument of appointment does anything other than appoint Mr Sharavdorj to the designated role, perhaps for a specified term rather than indefinitely. There is no basis to suggest that it would contain a list of duties, functions or limitations, other than a temporal one.

33      Further, based on the available evidence, I do not accept that Article 20 is limited to civil proceedings in Mongolia. In today's world where the proceeds of corruption or other violations of the public interest may be paid or transferred beyond the jurisdiction in which the project in question is located, it would not be logical for remedial action to be limited to that jurisdiction. There is nothing in the text of Article 20 which supports such a reading. For example, if judgment is obtained in Mongolian proceedings, enforcement proceedings outside Mongolia would be within contemplation, and for the same reasons so would pre-judgment steps to seek freezing orders in support of Mongolian proceedings. Without some textual basis, it is not possible to read into the Law on Prosecutor that the protection of Mongolia's public interest is limited geographically to within its borders. Concerns about extra-territorial effect would be misplaced. Recognising the prosecutor's right to give instructions for the commencement of foreign proceedings in no way gives the law extra-

15

*The Agency for Policy Coordination on State*                  [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

territorial effect in any sense that is objectionable to the sovereignty of other nations.

34     Turning to the question of Article 20 being limited to proceedings in which the prosecutor is also named as a party, Mr Quahe relies on the fact that MPOM is indeed named in the title of the Mongolian Claim, in addition to the plaintiffs. That fact does not in itself mean that the right to represent the plaintiffs is conditional upon MPOM also being named as a party. It may simply be a matter of the practice and procedure of the Mongolian court. Article 20 does not express any such condition or limitation. Further, this question concerns how MPOM should participate in these proceedings in accordance with Singapore practice and procedure. It concerns how actions are titled, and possibly also the issue of joinder of parties, but not representation of parties. Whether a legal right may be pursued by one plaintiff without joining another party to the action is a separate point from whether that plaintiff is properly represented by the solicitor on record for it.

35     The fifth and sixth defendants' last objection is that the authority to commence proceedings extended in the letter dated 6 November 2020 from Mr Nasanbat to Ms Walker is limited to proceedings against the defendants to the Mongolian Claim. The fifth and sixth defendants are not defendants to the Mongolian Claim. There is no merit in this objection. The letter describes the scope of engagement as extending to seeking "in all relevant courts orders to freeze or injunct (or any other relief necessary to freeze or injunct) any and all assets directly or indirectly/beneficially owned from time to time by the Defendants".[18] The fifth and sixth defendants are sued in these proceedings as

---

[18]      First affidavit of Nyamdorj Sharavdorj at Tab 13; third affidavit of Sarah Yasmin Walker at Tab 1.

16

*The Agency for Policy Coordination on State*            [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

alleged proxies of the first defendant, ultimately holding assets on his behalf or for his account. In any event, Mr Sharavdorj has on behalf of MPOM adopted these proceedings in his affidavit in unequivocal and broad terms, as described in [9] above.

**Conclusion**

36    I therefore hold on the preliminary point that the plaintiffs are duly and properly represented by Rev Law. MPOM is empowered under the Mongolian Law of Prosecutor to instruct K&S to bring proceedings outside Mongolia, including Singapore, in support of the Mongolian Claim and otherwise, and thus Rev Law properly represents the plaintiffs on the basis of the warrant to act constituted by Ms Walker's countersignature to Rev Law's letter dated 20 October 2020. This is because proceedings can be maintained in the name of a party on the instructions of someone else who has the right to act in law on behalf of the named party. In such cases the consent of the named party is not a pre-requisite.

37    I reserve costs of this preliminary point to the main hearing of the summons.

Philip Jeyaretnam
Judicial Commissioner

17

*The Agency for Policy Coordination on State*            [2021] SGHC 50
*Property of Mongolia v Batbold Sukhbaatar*

Chua Sui Tong, Abigail Tang En-Ping and Wong Wan Chee (Rev Law LLC) for the plaintiffs;
Wang Yufei (WongPartnership LLP) for the first defendant (watching brief);
Yap Zhe You, Ryo (Rajah & Tann Singapore LLP) for the second, third and seventh defendants (watching brief);
The fourth defendant absent and unrepresented;
Quahe Cheng Ann Lawrence and Joel Raj Moosa (Quahe Woo & Palmer LLC) for the fifth and sixth defendants.

Certified True Copy
Manager, Judge's Chambers
Supreme Court Singapore

18