UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE APPLICATION OF SUKHBAATAR BATBOLD FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782,

    *Petitioner*.

Case No. __21-mc-218__

---

**SUPPLEMENTAL DECLARATION OF YUFEI WANG IN SUPPORT OF SUKHBAATAR BATBOLD'S *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

I, Yufei Wang, declare as follows:

1. I am currently an Associate at the law firm WongPartnership LLP, based in Singapore. I was admitted as a solicitor in Singapore in 2018. I act as counsel to Sukhbaatar Batbold ("**Mr. Batbold**") in proceedings currently pending in the High Court of the Republic of Singapore (the "**Singapore Court**"). I previously submitted a Declaration (the "**First Declaration**") in support of Mr. Batbold's Application for an Order Seeking Discovery Pursuant to 28 U.S.C. Section 1782 (the "**Application**") permitting him to issue a subpoena for the production of documents and deposition testimony from K2 Intelligence or K2 Integrity (collectively "**K2**"), and now submit this Supplemental Declaration in support of the Application and in response to the Declaration of Chua Sui Tong (the "**Chua Declaration**").

2. Unless otherwise stated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by Mr. Batbold and/or professionals retained by Mr. Batbold, and upon my review of relevant documents, including the proposed subpoenas. If called as a witness, I could and would testify competently regarding the information set forth herein.

3.      In his Declaration, Mr. Chua states that the "Singapore Court found that K&S had been expressly authorized to act on behalf and in the name of the Petitioners in connection with this dispute by engagement letter issued by the Deputy General Prosecutor and Vice Counsel on Legal Matters of the Metropolitan Prosecutor's Office of Mongolia ("MPOM"), and that Article 20 of the Mongolian Law on Prosecutor authorizes the Prosecutor General of MPOM to bring claims on behalf of a state organization 'on his/her own initiative' 'if he/she deems that the public interest has been violated' and may do so 'without a power of attorney.'"  Chua Decl. ¶ 7.  Mr. Chua states that accordingly, "the Singapore Court found that 'MPOM is empowered under the Mongolian Law of Prosecutor to instruct K&S to bring proceedings outside Mongolia, including Singapore, in support of the Mongolian Claim and otherwise.'"  *Id.*  However, as Mr. Chua has noted in the Chua Declaration, this finding by the Singapore Court was made in an application by Mr. Saadien and Everest VC Pte Ltd to discharge the Freezing Order against them.  Chua Decl. ¶ 6.  Mr. Batbold was not a party to those proceedings, and did not file any affidavit and/or make any legal submissions therein.  It is Mr. Batbold's position that there are other sections of Mongolian law that affect whether the MPOM is authorized to bring claims on behalf of the Plaintiffs which were not brought to the attention of the Singapore Court in the application by Mr. Saadien and Everest VC Pte Ltd.

4.      In his Declaration, Mr. Chua also states that he is "not aware of any jurisdictional impediments to [Mr. Batbold] obtaining disclosure from K2 in connection with the Singapore Proceedings."  Chua Decl. ¶ 12.  He then states that "Mr. Kroll of K2 has subjected himself to the jurisdiction of the Singapore courts by submitting an affidavit in the Singapore Proceedings and may be subject to cross-examination in Singapore, upon application," and that "[w]hatever limitations may exist on Mr. Batbold's ability to obtain discovery from K2 in Singapore result

2

from the rules of Singapore civil procedure, not from any geographical or jurisdictional constraints." *Id.*

5.  Respectfully, it is my view that Mr. Chua's assessment is incomplete. Although parties to Singapore cases may seek leave from the Singapore courts to serve applications for discovery on non-parties who are located outside of the jurisdiction, such an order may be difficult to enforce. This is particularly true here, given that I am unaware of any connections K2 has with the jurisdiction such that a Singapore court could properly hold K2 in contempt for violating a court order. Moreover, even if Mr. Batbold is able to obtain discovery from K2 through the Singapore courts, that does not preclude Mr. Batbold from seeking to effectively and efficiently obtain discovery from K2, located in New York, through lawful means in this application.

6.  I further understand that K2 suggests that the Singapore Proceedings are "prejudgment attachment proceedings," are not "'adjudicative' in nature," and therefore "do not meet the requirements of section 1782 and cannot support" Mr. Batbold's Application. Resp. Opp. at 13. K2 further describes the proceedings in England, Hong Kong, Singapore and Jersey as prejudgment attachment proceedings "intended to preserve assets to satisfy a potential judgment from the court in Mongolia, which is where the merits of the dispute will be heard." *Id.* I understand Mr. Batbold's position is that K2 is incorrect under United States law regarding whether prejudgment attachment proceedings meet the requirements of Section 1782. In any event, the Singapore Proceedings are not prejudgment attachment proceedings alone, nor were they brought just to "satisfy a potential judgment from the court in Mongolia." Rather, the Plaintiffs in Singapore have asserted their own substantive claims against Mr. Batbold there and have sought to enjoin assets in Singapore on the basis of *those* Singaporean claims.

7. In fact, Mr. Chua confirms this in the Chua Declaration, stating that "the Mongolian Claimants filed an action in the High Court of the Republic of Singapore against Mr. Batbold . . . seeking *(among other things)* a freezing injunction" (emphasis added), "the Mongolian Claimants *seek damages* [in the Singapore Proceedings]" (emphasis added), and "[t]he freezing injunction sought and obtained in the Singapore Proceedings is (broadly speaking) comparable to a pre-judgment attachment of assets in Singapore in support of a future judgment *in the Singapore Proceedings*," Chua Decl. ¶ 2 (emphasis added)—not the Mongolian ones.

8. Finally, Mr. Chua does not contend that any of the discovery Mr. Batbold seeks is subject to legal professional privilege under Singaporean Law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: May 20, 2021

The Republic of Singapore

_____
Yufei Wang