**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
:
:
In re Application of Sukhbaatar Batbold for an    :    21-MC-218 (RA) (OTW)
Order Pursuant to 28 U.S.C. § 1782 to Conduct :
Discovery for Use in Foreign Proceedings         :    **ORDER GRANTING APPLICATION TO**
:    **CONDUCT DISCOVERY FOR USE IN**
:    **FOREIGN PROCEEDINGS PURSUANT**
:    **TO 28 U.S.C. § 1782**
:
:
:
------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge:**

I.   **Introduction**

On March 9, 2021, Petitioner Sukhbaatar Batbold submitted an *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings (together with all supporting papers, the "Application"). Mr. Batbold is the former Prime Minister of Mongolia and a current member of the Mongolian Great Khural, parliament. The Application seeks discovery from Respondent K2 Intelligence a/k/a K2 Integrity ("K2") to both defend lawsuits filed against Petitioner in the United Kingdom, the Republic of Singapore, the Hong Kong Special Administrative Region of the People's Republic of China, and the Bailiwick of Jersey, and to identify the purported real actors behind plaintiffs in the lawsuits. Mr. Batbold claims that the lawsuits are sham litigations that are politically motivated and funded by the then-Mongolian President, Khaltmaagiin Battulga.[1] On May 3, 2021, K2 opposed the

---

[1] As of June 25, 2021, Ukhnaagiin Khürelsükh succeeded Mr. Battulga as President of Mongolia. *See Mongolia's Ruling Party Secures a Thumping Victory*, Economist (June 17, 2021), https://www.economist.com/asia/2021/06/17/mongolias-ruling-party-secures-a-thumping-victory.

1

Application. (ECF 30-40). Petitioner supplemented his application by letter on June 24, 2021, to which K2 responded on July 12, 2021. (ECF 51, 52). Having considered the application and related briefing, the Court finds that the requirements of Section 1782 are met.

## II.     Background

In 2018, the General Prosecutor's Office of Mongolia retained K2 "to assist with tracing and recovering assets misappropriated from the state of Mongolia" in connection with Mongolian mining assets, especially those relating to two state-owned mining companies, the Erdenet Mining Corp. ("Erdenet") and Erdenes Oyu Tolgoi LLC ("EOT"). (ECF 33 ¶¶ 4, 5). K2's English employees did the primary work alongside the law firm King & Spalding LLP ("K&S"). (ECF 33 ¶ 6). During K2's investigation, a number of Mongolian political figures were "caught up in the probe." (ECF 33 ¶ 5). K2 and K&S maintain that the investigation would lead to litigation. (ECF 33 ¶ 6; ECF 35 ¶ 12).

K2 alleges to have found evidence linking Mr. Batbold to at-issue transactions with Erdenet and EOT. (ECF 33 ¶¶ 8-12). These transactions included the sale of hundreds of millions of dollars' worth of copper concentrates to companies connected to Cheong Choo Youn and Kim Hak Seon, who allegedly have ties to Mr. Batbold. (ECF 33 ¶ 12).

In October 2020, the Agency for Policy Coordination on State Property of Mongolia, Erdenet, and EOT (collectively, the "Mongolian Claimants"), filed claims in Mongolia against Mr. Batbold and others alleging that they misappropriated funds rightfully belonging to state-owned mines. (Fischer Decl., Ex. A). The Mongolian Claimants seek disgorgement of approximately $250 million. (ECF 15 at 2).

The Mongolian Claimants filed *ex parte* prejudgment attachment applications in the

United Kingdom, Hong Kong, Singapore, Jersey, and New York (collectively, without the New York proceeding, the "Foreign Proceedings"). (ECF 15 at 6). These proceedings were coordinated by K&S attorneys in London. (ECF 31 at 7). In support of these attachment applications, the Mongolian Claimants submitted affidavits from Jules Kroll, the founder of K2. (ECF 31 at 7). The New York action was voluntarily dismissed in New York State Supreme Court, Commercial Division on December 9, 2020. (ECF 15 at 8-9). The Foreign Proceedings remain pending and some have been stayed. (ECF 15 at 9).

III. Discussion

  a. Legal Standard

Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."[2] Section 1782 has been read to impose three statutory requirements:

> (1) that the person from whom discovery is sought reside (*or be found*) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or "any interested person."

*See In re Edelman*, 295 F.3d 171, 175-76 (2d Cir. 2002) (emphasis in original) (quoting *In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996)). "Once a district court is assured that it has jurisdiction over the petition, it 'may grant discovery under § 1782 in its discretion.'" *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Mees v. Buiter*, 793 F.3d 291,

---

[2] A motion seeking discovery under Section 1782 is a non-dispositive motion under Federal Rule of Civil Procedure 72(b). *See In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 340-41 (S.D.N.Y. 2019) (collecting cases). Nor does a Section 1782 discovery request fall under the excepted motions listed in 28 U.S.C. § 636(b)(1)(A). *Id.* at 341.

297 (2d Cir. 2015)).

The Supreme Court has outlined four factors that the district court should consider when determining whether to exercise its discretion to grant Section 1782 discovery. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). A court should look at (1) whether the target of discovery is a participant in the foreign proceeding, (2) the nature of the foreign tribunal, the character of the proceedings, and the tribunal's receptiveness to U.S. federal court assistance, (3) whether the application is attempting to "circumvent foreign proof-gathering restrictions," and (4) whether the request is "unduly intrusive or burdensome." *See id*. at 264-65 (collecting cases).

### b. The Discovery is "For Use" in a Foreign Tribunal

The parties do not dispute that the first and third statutory requirements of Section 1782 are met. (ECF 31 at 12). K2 resides or may be found in the Southern District of New York, and Mr. Batbold is an "interested person" within the meaning of Section 1782. (ECF 31 at 12).

K2 asserts that Mr. Batbold has not met the requirement that the discovery be "for use" in a foreign or international tribunal. (ECF 31 at 12-15). Determining whether this requirement is met requires the court to "focus[] on two questions: (1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). In *Euromepa*, the Second Circuit found that a French bankruptcy proceeding was "not an adjudicative proceeding within the meaning [of Section 1782]" because "[t]he merits of the dispute between [the parties had] already been adjudicated and [would] not be considered in the French Bankruptcy Proceeding." *Id.* at 28 (internal citations omitted). The "for use" requirement must be analyzed "according to the

4

particular facts of each case." *In re Accent Delight,* 869 F.3d 121, 131 (2d Cir. 2017). "The Court, however, need not consider either the 'discoverability' or the 'admissibility of [the requested] evidence in the foreign proceedings.'" *In re Vale S.A.*, No. 20-MC-199 (JGK) (OTW), 2020 WL 4048669, at *3 (S.D.N.Y. July 20, 2020) (alteration in original) (quoting *In re Gorsoan Ltd.*, 435 F. Supp. 3d 589, 597 (S.D.N.Y. 2020), *rev'd and remanded*, 843 F. App'x. 352 (2d Cir. 2021)). The Second Circuit articulated the following principles in *Accent Delight*:

> First, a Section 1782 applicant must establish that he or she has the practical ability to inject the requested information into a foreign proceeding. Second, as long as he or she makes that showing, it is not fatal to the application that he or she lacks a claim for relief before the foreign tribunal, whether for damages or otherwise. Rather, the term 'for use' in Section 1782 has only its ordinary meaning—that the requested discovery is something that will be employed with some advantage or serve some use in the proceeding.

869 F.3d at 132 (quoting *Mees*, 793 F.3d at 298).

The question here is whether the Foreign Proceedings are adjudicative in nature. An adjudicative proceeding is one where a tribunal must "decide the 'merits of the dispute.'" *Jiangsu Steamship Co. v. Success Superior Ltd.*, No. 14-CV-9997 (CM), 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015) (quoting *Euromepa*, 154 F.3d at 28). In *Jiangsu Steamshi*, the petitioner intended to file a London arbitration (but had not yet done so) and wanted to bring "unspecified 'foreign attachment proceedings' (in unspecified foreign countries) in order to secure or satisfy any award it might receive from [the unfiled London arbitration]." 2015 WL 3429220, at *1. The Court denied the Section 1782 application and stated that "[neither] pre-judgment attachment nor post-judgment enforcement proceedings are 'adjudicative' in nature." *Id.* at *4. But there is no broad rule that "asset discovery can never be adjudicative and is thus always impermissible under [Section] 1782." *Union Fenosa Gas, S.A. v. The Depository*

5

*Trust Company*, No. 20-MC-188 (PAE), 2020 WL 2793055, at *4 (S.D.N.Y. May 29, 2020) (quoting *Gorsoan*, 2020 WL 409729, at *4).

K2 argues that the Foreign Proceedings are not adjudicative "because they concern prejudgment attachment rather than any underlying causes of action, and because they have been stayed."[3] (ECF 31 at 12). Mr. Batbold counters that "each case seeks to adjudicate Mr. Batbold's alleged property rights and proxy relationships." (ECF 43 at 4). Unlike the *Jiangsu* petitioners, here there are specified attachment proceedings that arise out of an indisputably adjudicative action, the Mongolian proceedings.[4] Therefore, the Court finds that Mr. Batbold has met his burden that the discovery "will be employed with some advantage or serve some use in the proceeding" and that the Foreign Proceedings are adjudicative in nature. *See Accent Delight*, 869 F.3d at 132 (quoting *Mees*, 793 F.3d at 298).

---

[3] K2 fails to cite any legitimate support for its argument that an action is not adjudicative in nature under Section 1782 because it is stayed. (ECF 31 at 13-14). In *Accent Delight*, the only case K2 cites, a Section 1782 application was mooted because of a stay on *forum non conveniens* grounds, that "effectively terminat[ed] the case." 869 F.3d at 125. In contrast, the Mongolian case against Mr. Batbold was stayed pending the Mongolian court's alleged review of the "top secret" designation. (ECF 15 at 9). Respondent does not, and likely could not, argue that such stay effectively terminates the case. *See In re Iraq Telecom Ltd.*, No. 18-MC-458 (LGS) (OTW), 2019 WL 3798059, at *3 (S.D.N.Y. Aug. 13, 2019), *reconsideration denied*, No. 18-MC-458 (LGS) (OTW), 2019 WL 5080007 (S.D.N.Y. Oct. 10, 2019) ("Section 1782 can be invoked, however, once the proceeding is 'within reasonable contemplation' and does not need to be 'imminent' or to have commenced.") (quoting *Intel*, 542 U.S. at 253)).

[4] The Court notes that K2's global coordinating counsel, Sarah Walker, argued in *Union Fenosa Gas, S.A. v. Depository Trust Co.*, that English attachment proceedings *are* adjudicative—the opposite position K2 takes here. No. 20-MC-188 (PAE), 2020 WL 2793055, at *4 (S.D.N.Y. May 29, 2020) ("UFG's original motion argued that 'the English Court's determination concerning whether particular assets are subject to attachment and execution under English law is adjudicative in nature' . . . ."). *See* ECF 33 ¶ 6 ("Sarah Yasmin Walker, a Partner in [K&S's] London office, has served as global coordinating counsel for the legal actions arising from the Mongolia Investigation."). In *Union Fenosa*, Ms. Walker averred that in English attachment proceedings "the English Court will be asked to consider and *adjudicate* questions pertaining to . . . ownership and possessory interests in those funds and apply English law to determine whether those interests leave the funds susceptible to execution." 2020 WL 2793055 at *4 (emphasis added). While K2 is not judicially estopped from making this argument, as judicial estoppel applies to *parties* and not *counsel*, I nevertheless agree that attachment proceedings are adjudicative in nature.

### c. *Intel* Factors

As articulated above, before a Section 1782 application is granted, a petitioner must also satisfy the discretionary factors laid out in *Intel*. The Court finds that these factors weigh in favor of granting the Application.

The first discretionary factor evaluates whether the discovery is sought from a party within the foreign tribunal's jurisdictional reach. *See Intel*, 542 U.S. at 264 (noting that if foreign proceedings can order production, Section 1782 is not necessary). Second, the Court considers the nature of the foreign tribunal, the character of the foreign proceeding and the tribunal's receptivity to the federal court's assistance. *Id.* at 264. Third, the Court will evaluate whether the Application is an attempt to circumvent limitations on disclosure or discovery in foreign proceedings. *Id.* at 265. And fourth, the Court will consider whether the discovery requests are "unduly intrusive or burdensome." *Id.* Under Rule 45 of the Federal Rules of Civil Procedure, "[w]hether a subpoena imposes an 'undue burden' 'depends on such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Koch v. Pechota*, No. 10-CV-9152, 2012 WL 4876784, at *3 (S.D.N.Y. Oct. 12, 2012) (quoting *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03-CV-1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (citations and quotations omitted)).

Here, the first two factors lie squarely in Petitioner's favor: K2 is not a party to any of the foreign proceedings against Mr. Batbold, and the courts in the United Kingdom, Jersey, Singapore, and Hong Kong are all receptive to Section 1782 discovery. *See, e.g., La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014) (United

7

Kingdom), *In re Polymer Sols. Int'l, Inc.*, No. 18-CV-1864 (DKC), 2018 WL 11226113, at *1 (D. Md. June 27, 2018) (Jersey); *In re BNP Paribas Jersey Tr. Corp. Ltd.*, 18-MC-00047 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018) (Jersey); *In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016) (Hong Kong); *In re Application of Grains and Industrial Products Trading Pte Ltd and Bunge S.A.*, 19-MC-00006 (S.D.N.Y. Jan. 15, 2019) (Singapore); *Accent Delight*, 869 F.3d at 133 (noting that the district court granted discovery in relation to a Singapore action). Mongolia, as a party, has also given and received discovery pursuant to Section 1782. *In re Gov't of Mongolia v. Itera Int'l Energy, L.L.C.*, No. 3:08-MC-46-J-32 (MCR), 2009 WL 10712603, at *11 (M.D. Fla. Nov. 10, 2009).

I further find the Application is not an attempt to circumvent discovery in the Foreign Proceedings. Respondent makes much of the fact that Petitioner did not first seek discovery in the foreign tribunal, but "[c]ourts may grant [Section] 1782 applications even where the applicant did not first seek discovery in the foreign tribunal . . . or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding." *BNP Paribas Jersey Tr. Corp.*, 2018 WL 895675, at *3 (internal citations omitted); *see also Intel,* 542 U.S. at 252–53 ("We now hold that [Section] 1782 does not impose such a [foreign discovery] requirement."). Instead of focusing on whether a petitioner first sought discovery in the foreign tribunal, a court's analysis of this factor hinges on whether a petitioner is pursuing discovery in bad faith, which I find Mr. Batbold is not. *See Minactec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269 (LEK) (RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008). To the extent K2 raises concerns about privilege, those concerns would be better addressed in a future discovery motion when the Court can look at actual discovery requests. Further, K2 may

challenge particular requests under Rule 26 et seq. of the Federal Rules of Civil Procedure, and any local civil rules governing discovery.

Finally, I find that discovery is relevant and not unduly burdensome. The information Mr. Batbold seeks is limited to non-privileged information about the K2 investigation, including the identity of the parties funding the investigation and foreign proceedings, and the non-privileged documents underlying K2's investigation. (ECF 15 at 22). Even if this request were not properly tailored, the Court has the authority to closely tailor any future discovery order. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 83 (2d Cir. 2004); *In re Application for an Order Permitting Metallgesellshaft AG to Take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997); *Euromepa*, 51 F.3d at 1101.

## IV. Conclusion

For the foregoing reasons, Petitioner's discovery application pursuant to 28 U.S.C. § 1782 is **GRANTED**. Petitioner is hereby authorized to serve its proposed subpoenas by October 20, 2021, if it has not served them already. If K2 seeks to file a motion to quash or a motion for a protective order, it must do so by **November 3, 2021 and must follow this Court's Individual Practices in doing so**.

The Clerk of the Court is respectfully directed to close ECF 12.

**SO ORDERED.**

Dated: October 6, 2021  
New York, New York

_s/ Ona T. Wang_  
**Ona T. Wang**  
United States Magistrate Judge