# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Orin Snyder
Direct: +1 212.351.2400
Fax: +1 212.351.6335
OSnyder@gibsondunn.com

April 1, 2022

VIA ELECTRONIC FILING

The Honorable Ona T. Wang
United States District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

Re:     In re Application of Sukhbaatar Batbold for an Order Pursuant to 28 U.S.C. § 1782,
         21-mc-00218-RA (S.D.N.Y.)

Dear Judge Wang:

Pursuant to the Court's order dated February 9, 2022, the parties hereby submit this joint status letter.

***Petitioner's Position.***

*Background.*  As the Court recalls, Petitioner Sukhbaatar Batbold brought this Section 1782 action seeking discovery from Respondent K2 Integrity ("K2") to defend himself in a series of baseless lawsuits initiated around the world.  Each case purports to arise out of alleged investigative work conducted by K2.  Mr. Batbold therefore brought this application to uncover critical information about K2's work in orchestrating these political hit jobs.

*Procedural History and Pending Requests.*  On October 6, 2021, this Court granted Mr. Batbold's application for discovery from K2.  Dkt. 53.  K2 then filed objections to that Order.  Dkt. 58.  On November 3, 2021, K2 filed a letter motion seeking leave to move to quash.  Dkt. 59.  On November 8, 2021, Mr. Batbold filed a letter motion seeking leave to cross-move to compel and expedite discovery.  Dkt. 62.  Those requests are pending.  Mr. Batbold respectfully requests that this Court set a briefing schedule immediately and ultimately grant the critical discovery he seeks.[1]

---

[1]  K2's pre-motion letter framed its anticipated motion to quash primarily on privilege grounds.  But K2's blanket privilege assertions are even more meritless today than they were when K2 first advanced those claims.  The alleged client in the attorney-client relationship K2 seeks to use as a shield has specifically confirmed that no attorney-client relationship ever existed.  Because K2's privilege claim is derivative of that attorney-client relationship, and because that attorney-client relationship never existed, none of K2's documents are privileged.  *See, e.g.*, *Priest v. Hennessy*, 51 N.Y.2d 62, 68 (1980) (explaining that "it is beyond dispute that no attorney-client privilege exists unless an attorney-client relationship has been established").  K2's documents must be produced.

## GIBSON DUNN

The Honorable Ona T. Wang
April 1, 2022
Page 2

*Recent Developments.*  On February 2, 2022, Mr. Batbold wrote this Court regarding a dramatic update to the global cases.  Dkt. 79.  As our letter explained, the law firm leading the litigation onslaught against Mr. Batbold, King & Spalding LLP ("K&S"), had no authority to bring or maintain those cases at all.  In fact, the Office of the General Prosecutor of Mongolia ("OPG")—who K&S claims authorized all global cases against Mr. Batbold—has confirmed that fact.  Specifically, OPG has now issued multiple letters expressly rejecting that K&S is, or ever was, authorized to represent its purported clients anywhere around the world in litigation against Mr. Batbold.  OPG further instructed K&S to terminate all such litigation. Mr. Batbold's counsel has repeatedly asked K&S whether it intends to withdraw these proceedings.  Yet K&S has refused to substantively respond.

In addition to the global litigations against Mr. Batbold, K&S also initiated a Section 1782 proceeding on behalf of its purported clients in the Southern District of New York.  This application sought discovery from JPMorgan Chase Bank, N.A.  Mr. Batbold received permission to intervene in opposition to the JPMorgan application.  Following K&S's receipt of OPG's instructions requiring it to terminate all cases against our client, K&S requested that the Court stay all briefing on Mr. Batbold's opposition to allow K&S time to "investigat[e]" OPG's multiple letters.  *See Ex Parte Application of Agency for Policy Coordination on State Property, et al.*, No. 21-mc-178-VSB (S.D.N.Y. 2021), Dkt. 29.  The Court granted the request and ordered K&S to provide an update no later than April 1, 2022.  *Id.*, Dkt. 30.  This morning, K&S filed a notice of voluntary dismissal of its Section 1782 proceeding, confirming the illegitimacy of that action.  *Id.*, Dkt. 32.  But K&S has not stated whether it intends to withdraw or continue pursuing the other cases pending around the globe.

*Conclusion.*  Our hope is that K&S will today agree to conclude all litigation against our client.  But as of the time of this filing, K&S has not made clear its intentions.  As a consequence, all foreign cases that are the subject of this Section 1782 petition remain pending.  And Mr. Batbold still needs discovery to defend those cases.  Mr. Batbold also needs discovery to aid in litigation he may bring himself in Mongolia to address these abusive actions against him and recover for the harms these sham cases have caused.  Ultimately, given that discovery will be needed whether or not K&S complies with OPG's demands to withdraw the global litigations, Mr. Batbold respectfully requests a ruling from this Court allowing the parties to brief their cross discovery motions so that Mr. Batbold may finally recover the discovery he has long sought against K2.[2]

**Respondent's Position.**

---

[2]  If K&S does dismiss all cases against Mr. Batbold, Mr. Batbold reserves the right to seek leave to amend his Section 1782 petition to seek discovery in aid of cases reasonably contemplated.

**GIBSON DUNN**

The Honorable Ona T. Wang
April 1, 2022
Page 3


This Section 1782 application relates to foreign proceedings commenced by the Prosecutorial Organization of Mongolia against Mr. Batbold on behalf of the Agency for Policy Coordination on State Property, Erdenet Mining Corporation, and Erdenes Oyu Tolgoi LLC (together, the "Mongolian Claimants"). K2 understands from the Mongolian Claimants' counsel, King & Spalding LLP, that the Mongolian Claimants' proceedings against Mr. Batbold are still pending in the British Virgin Islands and Singapore, and that the freezing injunctions entered in England, the Bailiwick of Jersey, and Hong Kong SAR, as well as in the Singapore proceeding, remain in effect. As of March 31, 2022, the respondents to those freezing injunctions remain subject to their terms. We also understand that, as a matter of Mongolian law, the case in Mongolia can be re-filed.

On December 6, 2021, Mr. Batbold also represented to the Court that he seeks discovery for "future litigation in Mongolia that is reasonably contemplated and arises out of the Mongolian proceedings and the improper smears of Mr. Batbold's reputation." *See* ECF 69 at 1. K2 has received no further information about this purportedly contemplated litigation other than what has been filed on this Court's docket.

K2 further understands that Mongolian Claimants' counsel has received "several letters purporting to terminate [Mongolian Claimants' counsel's] standing authorization to" bring these actions. *See* Letter Motion to Stay Deadlines, *Agency for Policy Coordination on State Prop., et al. v. JPMorgan Chase Bank, N.A.*, No. 21-mc-178 (S.D.N.Y. Mar. 16, 2022), ECF No. 29. As King & Spalding explained in that letter:

> If taken at face value, the letters would appear to signal that the OPG has abruptly shifted its priorities—from years of diligently rooting out corruption among public officials, to now urgently seeking to discharge approximately $70 million in assets that it had frozen for the benefit of the Mongolian people, including high-end real estate in London, New York, and Phuket, beneficially owned by Mr. Batbold. Needless to say, [Mongolian Claimants' counsel] cannot take such letters at face value, particularly when they appear to have been prompted by the very person whose assets are frozen. Without divulging attorney-client communications, [Mongolian Claimants' counsel] can state that [they] are conferring directly with the relevant Mongolian authorities to understand the circumstances of these letters and affirm the explicit authorization [they] have long been operating under.

Without divulging communications protected under the American attorney-work product doctrine, the English litigation privilege, and/or any other applicable privileges, K2 understands that Mongolian Claimants' counsel is still conferring directly with the relevant Mongolian authorities.

# GIBSON DUNN

The Honorable Ona T. Wang
April 1, 2022
Page 4


Respectfully submitted,


_/s/ Orin Snyder_                                         _/s/ Darryl Stein*_

Orin Snyder                                              Darryl Stein

Counsel for Petitioner                                   Counsel for Respondent

                                                        _* Signature used with
                                                        permission pursuant to
                                                        S.D.N.Y. ECF Rule 8.5(b)_



cc:      All Counsel of Record