# KOBRE & KIM

800 Third Avenue
New York, New York 10022
www.kobrekim.com
Tel +1 212 488 1200

April 14, 2022

The Honorable Ona T. Wang
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *In re Application of Sukhbaatar Batbold*, 21-MC-00218-RA-OTW (S.D.N.Y.)

Dear Judge Wang:

We are counsel to Respondent K2 Integrity ("K2") in connection with the above-captioned application by Mr. Batbold to take discovery under 28 U.S.C. § 1782 ("Section 1782"). We write in accordance with the Court's April 8, 2022 Order to address the four issues set forth therein. *See* ECF 82.

## I.   The Application seeks privileged documents from K2, notwithstanding Batbold's efforts to undermine the attorney-client relationships of his adversaries.

For the past several years, the General Prosecutor's Office of Mongolia ("OPG") has worked to root out corruption among public officials. As a result of this work, courts in England, Singapore, Hong Kong SAR, and the Bailiwick of Jersey froze approximately $70 million in assets based on cogent evidence that those assets had been plundered from the Mongolian people by Batbold. That evidence remains uncontroverted, and those freezing orders remain in place.

But now—according to Batbold—the OPG has abruptly abandoned these efforts. Relying upon letters that his counsel received, purportedly from the OPG, Batbold asserts that no attorney-client relationship exists between the OPG and its legal counsel, King & Spalding International LLP ("K&S"), and that the freezing injunctions will soon be discontinued. Strangely, the bulk of these communications were not sent directly to K&S but instead to counsel for the individual that allegedly perpetrated the very wrongdoing that the OPG had been zealously prosecuting. This surprising stream of correspondence does not appear to stem from any new information disproving Batbold's alleged wrongdoing; it instead follows an election in which Batbold's political allies gained power.

Given the extensive history of K&S's and K2's anti-corruption work for the OPG and Mongolia's Independent Authority Against Corruption ("IAAC"), and the suspicious developments in Mongolia, Batbold's claims about his litigation adversaries' attorney-client relationships cannot be taken at face value. K&S is still conferring directly with their clients about

Americas (New York, Buenos Aires, Chicago, Delaware, Miami, San Francisco, São Paulo, Washington DC)
Asia-Pacific (Hong Kong, Seoul, Shanghai), EMEA (Dubai, London, Tel Aviv), Offshore (BVI, Cayman Islands)

Kobre & Kim refers to Kobre & Kim llp, a New York Limited Liability Partnership.

April 14, 2022
Page 2

the evolving situation in Mongolia. In any event, it is not the case that K&S lacked authority to represent the OPG. As Deputy Prosecutor General Nasanbat Tseepil explained in a sworn declaration in support of K2's motion, the OPG authorized K&S to file proceedings "in various other jurisdictions worldwide." *See* ECF 34 at 2; *see also* ECF 59 at 2 (summarizing agreements). It is hardly credible that *no* attorney-client relationship existed between K&S, on the one hand, and IAAC and the OPG, on the other. And, therefore, communications pursuant to that relationship are rightly protected by the same privileges under English and American law that protect the information sought by this Application. Indeed, those privileges would persist even if the OPG were to have terminated its attorney-client relationship with K&S.[1] The attorney-client and legal advice privileges belong to the OPG and the IAAC, and K2 cannot unilaterally waive them.[2]

Moreover, because all of K2's work has been undertaken in anticipation of litigation, the English litigation privilege and the U.S. attorney work product doctrine also apply and grant even broader protections. Rule 26(b)(3)(A) protects material "prepared in anticipation of litigation or for trial by or for [a] party or its representative," and "it is not . . . necessary that the material be prepared by or at the direction of an attorney."[3] Moreover, "the work product privilege belongs to the attorney [here, K&S] as well as the client [here, the OPG and IAAC]," and it "cannot be waived by the client alone."[4]

These privileges protect against precisely the sort of intrusion that Batbold seeks by this Application. If the Court concludes that Batbold is still entitled to take discovery under Section 1782, his demands for privileged information weigh in favor of quashing or, at minimum, significantly narrowing the scope of discovery under the fourth *Intel* factor and Rule 45.

## II. Batbold's Application does not support his belated assertion that discovery should be granted in aid of any anticipated future litigation.

Batbold's Application does not seek discovery in aid of any contemplated future proceedings. *See* ECF 2 at 15 (describing the pending foreign proceedings). As such, the Application does not describe the parties, the factual grounds, or the legal theories of this purportedly contemplated litigation, nor has Batbold provided the Court with any "concrete basis from which it can determine that" such an action is "reasonabl[y] contemplat[ed]" as required by Second Circuit precedent.[5] Even if the representations of Batbold's counsel in this action could be sufficient to establish that these purported future proceedings satisfied the statute's "for use"

---

[1] *See* Paul R. Rice, Attorney-Client Privilege in the United States § 2:5 (2d ed. 1999) ("[T]he privilege survives . . . the termination of the attorney-client relationship that gave rise to the communication." (citing cases)); *see also Swidler & Berlin v. United States*, 524 U.S. 399, 406 (1998) (recognizing that the attorney-client privilege survives even the death of the client).

[2] *Bus. Integration Servs., Inc. v. AT & T Corp.*, 251 F.R.D. 121, 124 (S.D.N.Y. 2008) (noting that "privilege belongs solely to the client and may only be waived by him") (citation and quotes omitted), *aff'd*, 2008 WL 5159781 (Dec. 9, 2008).

[3] *See also Tower 570 Co. LP v. Affiliated FM Ins. Co.*, No. 20-CV-0799 (JMF), 2021 WL 1222438, at *2 (S.D.N.Y. Apr. 1, 2021) ("[T]he rule affords protection to materials gathered by non-attorneys even where there was no involvement by an attorney." (citation and quotes omitted)).

[4] *In re China Med. Techs., Inc.*, 539 B.R. 643, 658 (S.D.N.Y. 2015).

[5] *See Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015).

April 14, 2022
Page 3

requirement and the other *Intel* factors, Batbold has not provided any further information that would meet that burden.

Whether Batbold seeks discovery *only* in aid of these contemplated future proceedings, or *in addition to* the foreign proceedings identified in the Application, his belated disclosure of this intended use should be addressed by the Court. If the Application is not denied outright, Batbold should file an amended application so that the Court can consider this issue—including whether the foreign proceedings identified in the original Application are pretextual—on a complete record.

### III.   *The discovery currently sought is not "for use in" any global litigations.*

Proceedings remain pending against Batbold in the British Virgin Islands, Singapore, England, Hong Kong SAR, and the Bailiwick of Jersey, but the discovery that Batbold seeks is not "for use" in those litigations. The Mongolian claimants, and Jules Kroll as an affiant, submitted a significant volume of evidence in support of those proceedings, yet Batbold has not challenged the disclosures in those actions nor sought to cross-examine Mr. Kroll. Nor has Batbold identified specific claims or defenses that his proposed discovery requests would help resolve. Instead, he seeks sweeping categories of information from K2, ostensibly to search for a way he can try to argue that that the investigation is a "politically motivated sham." ECF 15 at 4. Any likely benefit to this discovery is immaterial to the tribunals hearing the foreign proceedings. ECF 35 ¶ 8; ECF 36 ¶ 10; ECF 37 ¶ 8; ECF 40 ¶ 17.

Instead, as explained above, Batbold appears to be fishing for unspecified claims against unspecified parties. Under Second Circuit precedent, foreign litigations may not be used "as a ruse for obtaining discovery" under Section 1782, and evidence of such a pretextual application "might support denying the Section 1782 application altogether."[6] Nor, for that matter, can Batbold use Section 1782 to fish for a basis to bring speculative claims.[7]

### IV.   *Batbold has not provided different or narrowed discovery demands to K2.*

As of the date of this letter, Batbold has not informed K2 that he seeks different or narrower discovery in connection with this Application.[8]

Respectfully submitted,

/s/ Darryl G. Stein
+1 212 488 1243

---

[6] *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017); *see also KPMG, L.L.P.*, 798 F.3d at 120 n.7 ("plainly irrelevant" discovery cannot be "said to be 'for use' in" foreign litigation).

[7] *See Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101–02 (2d Cir. 2020).

[8] The Court asked whether Batbold modified his discovery demands "in light of the dismissals." ECF 82. The two cases that have been dismissed since he filed his application, both without prejudice, are a proceeding in Mongolia (*see* ECF 71 at 1–2) and a separate Section 1782 application (*see* ECF 81 at 2). Several other proceedings remain pending, including substantive claims in the BVI and Singapore, and freezing injunction proceedings in Singapore, England, Hong Kong SAR, and the Bailiwick of Jersey.