# EXHIBIT 5

## ХӨРӨНГӨ, ОРЛОГЫГ ОЛЖ ТОГТООХ, БУЦААН ШИЛЖҮҮЛЭХ ТАЛААР АЖИЛ ҮЙЛЧИЛГЭЭ ҮЗҮҮЛЭХ ГЭРЭЭ

### Гэрээний зорилго

Энэхүү гэрээний зорилго нь Монгол улсад шалгагдаж байгаа авлигын гэмт хэргийн улмаас учирсан хохирлыг Монгол улсын Эрүүгийн хэрэг хянан шийдвэрлэх тухай хууль, бусад хууль тогтоомжид заасан журмын дагуу нөхөн төлүүлэх, хор уршгийг арилгуулах,хөрөнгө орлого хураах албадлагын арга хэмжээг хангахын тулд гадаад улс оронд байгаа хөрөнгө, орлого, эд мөрийн баримтаар тооцогдвол зохих зүйлсийг олж тогтоох, үрэгдэхээс сэргийлж царцаан, битүүмжлэн, хураан авч, шилжүүлэн авах зорилгоор талуудын энэхүү гэрээгээр харилцан тохирсон үйл ажиллагааг ойлгоно.

### Гэрээний оролцогчид



(б) Энэ гэрээнд заасан ажил үйлчилгээг гүйцэтгэх явцад К2 нь Кинг & Спалдинг ХХК-тай хамтрахаас гадна, бусад хуулийн этгээд, гуравдагч талын зөвлөхүүдийг /цаашид К2-ын хамтрагчид гэнэ/ хөлсөлж ажиллуулах эрхтэй байна.



### Гэрээний зүйл

МУЕПГ-ын хүсэлтийн дагуу К2-оос Монгол улсад шалгагдаж байгаа авлигын гэмт хэрэгт холбогдуулан уг гэмт хэргийн улмаас учирсан хохирлыг нөхөн төлүүлэх, хор уршгийг арилгах зорилгоор гадаад улс оронд байгаа хөрөнгө, орлого, эд мөрийн баримтаар тооцогдвол зохих зүйлсийг олж тогтоох, эдгээр хөрөнгө орлого байгаа улсын дотоодын хууль тогтоомж, олон улсын гэрээ конвенцид заасан үндэслэл журмын дагуу хураан авч, гэрээнд заасан Монгол улсын эрх бүхий байгууллагад шилжүүлэн өгөх ажил үйлчилгээг үзүүлэх юм.

Гэрээний төлбөр

(а) К2 нь энэхүү гэрээний дагуу буцаан шилжүүлсэн хөрөнгийн үнэлгээний хувиар тодорхойлогдсон үр дүнгийн төлбөрийг хүртэх эрхтэй байна

- 50 сая ам доллар хүртэлх хөрөнгө буцаан шилжүүлэхэд К2-ын үр дүнгийн төлбөр нь буцаан шилжүүлсэн хөрөнгийн үнэлгээний 1/3 хувьтай тэнцэхүйц байна.

- 50 сая ам доллар - 150 сая ам доллар хүртэлх хөрөнгө буцаан шилжүүлэхэд К2-ын үр дүнгийн төлбөр нь буцаан шилжүүлсэн хөрөнгийн үнэлгээний 28% хувьтай тэнцэхүйц байна.

- 150 сая ам доллараас дээш хөрөнгө буцаан шилжүүлэхэд К2-ын үр дүнгийн төлбөр нь буцаан шилжүүлсэн хөрөнгийн үнэлгээний 20%-тай тэнцэхүйц байна.

(б) Хөрөнгийн үнэлгээг тухайн хөрөнгө, орлогыг МУЕПГ-т буцаан шилжүүлсэн өдрөөр тооцож үнэлнэ.

(в) Буцаан шилжүүлэх гэдгийг тодорхой хөрөнгө, орлогын өмчлөл МУЕПГ-т бүрэн шилжихэд эсвэл К2-ын тусламжтайгаар Субъект болон МУЕПГ тохиролцоонд хүрэхэд гэж томъёологдох болно.

Гэрээний зүйлд заасан хөрөнгө, орлого эргүүлэн авчрахтай холбоотойгоор гарсан К2-ын болон түүний бусад Хамтрагчдийн бүх төлбөр, зардлууд нь дээрхи төлбөрт багтана.

Гэрээний төлбөр төлөх үе шат

(а) К2 ба түүний хуулийн Хамтрагчид, МУЕПГ-тай харилцан зөвшилцсөний үндсэн дээр буцаан шилжүүлсэн мөнгөн хөрөнгүүдийг байршуулах зорилготойгоор харилцан тааламжтай улсад байрлах санхүүгийн байгууллагад эскроу данс нээнэ.

(б) Монгол улсын эрх бүхий байгууллагад шалгагдаж байгаа эрүүгийн хэрэг нь Монгол улсын хууль тогтоомжид заасанаар эцэслэн шийдвэрлэгдэж, хүчин төгөлдөр болсон шүүхийн тогтоолоор К2-ын буцаан шилжүүлсэн хөрөнгө, орлогыг улсын орлогод авах шийдвэр гарсан тохиолдолд МУЕПГ-ын зөвшөөрснөөр, Эскроу данснаас К2-ын үр дүнгийн төлбөр төлөгдөх ба, мөнгөн хөрөнгийн үлдэгдэл нь МУЕПГ-ын хүсэлтээр Монгол Улсын эрх бүхий байгууллагын зохих данс руу шууд, бүрэн шилжинэ.

(в) Хэрэв К2-ын буцаан шилжүүлсэн бусад хөрөнгө нь Монгол Улсын эрх бүхий байгууллагын өмчлөлд шилжих бол К2-ын үр дүнгийн хөлс тухайн хөрөнгийг хүлээн авснаас 30 хоног дотор төлөгдөнө.

(г) Хэрэв мөнгөн хөрөнгийг дээр дурдсанаас өөр хэлбэрээр шилжүүлж авах тохиолдолд үр дүнгийн төлбөр нь мөнгөн хөрөнгийг хүлээн авсанаас 30 хоногийн дотор төлөгдөнө.

CONFIDENTIAL                                                                                                                      K2_0000029

### Гэрээний хүчинтэй хугацаа ба дуусгавар болох

Энэхүү Гэрээ нь үзэглэсэн өдрөөс эхлэн дуусах хүртэл хүчин төгөлдөр хэвээр байна. Энэхүү Гэрээг дараах тохиолдолд дуусгавар болгож болно: (а) талууд бичгээр харилцан тохиролцсон; эсхүл (b) аль нэг тал нь нөгөө талдаа бичгээр мэдэгдэл хүргүүлсэнээс хойш 30 хоногийн дараа. Энэхүү Гэрээг дуусгавар болгосон нь талуудын мөнгөтэй холбоотой эрх болон ийнхүү дуусгавар болгосон өдрөөс өмнө талуудад хүлээлгэсэн үүргийг хөндөхгүй.

### Талуудын онцгой эрх.

Ажил үйлчилгээнүүдээр хангах зорилготойгоор К2 нь МУЕПГ-ын онцгой эрхтэй үйлчилгээ үзүүлэгч байна. Энэхүү Гэрээний хугацаанд МУЕПГ нь К2-ын бичгэн зөвшөөрөлгүйгээр ижил төстэй ажил үйлчилгээ үзүүлэхээр өөр ямар нэг талын үйлчилгээг авах талаар зохион байгуулах, гэрээ хийх, яриа хэлцэл хийхгүй байна.

### Гэрээний нууцлал

(а) Талууд нууц мэдээллийн нууцлалыг хангаж энэхүү Гэрээгээр хүлээсэн үүргээ биелүүлэхээс бусад зорилгоор уг мэдээллийг ашиглаж болохгүй. Нууц мэдээлэл гэдэг нь аль нэг тал эсхүл түүнтэй нэгдмэл сонирхолтой этгээдэд дурын хэлбэрээр шууд эсхүл шууд бусаар гаргаж өгсөн ямарч төрлийн мэдээлэл байна.

(b) Мэдээллийг дамжуулах эсвэл ашиглах гэж буй тал дараах зүйлийг нотолж чадсан тохиолдолд мэдээллийг Нууц мэдээлэл гэж тооцохгүй: (i) тухайн мэдээллийн бие даан олж авсан; (ii) тухайн тал энэхүү Гэрээг зөрчөөгүй байхад уг мэдээлэл нэгэнт олон нийтэд мэдэгдсэн; (iii) уг мэдээллийг хууль ёсоор эзэмшиж бусдад түгээх эрхтэй гуравдагч талаас ямар нэгэн болзолгүйгээр авсан; (iv) уг мэдээлэл дамжуулахаас өмнө тухайн тал нь нэгэнт хууль ёсоор уг мэдээллийг эзэмших байсан.

(c) Энэхүү Гэрээнд заасан зүйлийг үл харгалзан талууд нууц мэдээллийг дараах байдлаар бусдад дамжуулж болно: (i) шүүх эсхүл эрх бүхий байгууллагын шийдвэрт заасан хэмжээнд; (ii) 8-р зүйлд заасан хязгааралтаас доошгүй нууц хадгалах хатуу нөхцөл зааж өгч мэргэжлийн үйл ажиллагаа явуулж буй этгээдэд; (iii) тухайн тал харъяалагдах улсын хууль тогтоомжоор шаардсан хэмжээнд; (iv) тухайн тал энэхүү Гэрээгээр хүлээсэн эрх үүргээ гэрээнд заасан нөхцөлийн дагуу биелүүлэх боломжтой болгохын тулд уг мэдээлэл шаардлагатай байгаа этгээдэд. Ингэхдээ мэдээлэл хүлээж авсан этгээдээс нь 8-р зүйлд заасны дагуу уг мэдээллийг нууц гэж тооцож мэдээллийн нууцлалыг хадгалахыг шаардах ёстой.

### Гэрээний заалтуудын хүчинтэй байдал

Энэхүү Гэрээний аль нэг зүйл, заалт эсхүл нөхцөлийг хүчингүй, хууль бус эсвэл хэрэгжүүлэх боломжгүй гэж тооцсон тохиолдолд энэ нь энэхүү Гэрээний бусад

зүйл заалт, нөхцөлийн хүчинтэй, хууль ёсны байдал болон хэрэгжүүлэх боломжид нөлөөлөхгүй.

### Гэрээний эрх татгалзаагүй тухай заалт

Аль нэг тал энэхүү Гэрээгээр олгосон эрх болон эрхзүйн хамгаалалт хэрэгжүүлээгүй эсхүл хойшлуулсаныг тухайн эрх болон эрхзүйн хамгаалалтаас татгалзсан гэж үзэхгүй. Мөн тухайн эрх, бүрэн эрхийг нэг удаа эсхүл хэсэгчлэн хэрэгжүүлсэн, эсвэл тухайн эрх, бүрэн эрхийг албадан хэрэгжүүлэх алхамаас татгалзсан эсхүл зогсоосон явдал нь цаашид бусад эрх, бүрэн эрхийг хэрэгжүүлэхэд саад болох ёсгүй. Энэхүү Гэрээгээр талуудад олгосон эрх болон эрхзүйн хамгаалалтын хэрэгслүүд нь бие биенийгээ үгүйсгэхгүй бөгөөд энэхүү Гэрээнд заасан эрх болон эрхзүйн хамгаалалтын хэрэгслээр хязгаарлагдахгүй. Аль нэг тал эрхээсээ татгалзаж байгаа бол татгалзсан тухай баримтыг тухайн талын эрх бүхийн албан тушаалтан бичгээр үйлдэж зохих ёсоор баталгаажуулсан байх ёстой.

### Мэдэгдэл

Энэхүү Гэрээний дагуу хүргүүлэх аливаа мэдэгдэл, тэр дундаа хаяг өөрчлөгдсөн тухай мэдэгдлийг бичгээр үйлдэж (a) баталгаат шуудан; эсвэл (b) олон улсад хүлээн зөвшөөрөгдсөн шуурхай курьер (жишээ нь Federal Express)-ээр дамжуулан нөгөө талын төлөөлөгчид гардуулсан бол зохих ёсоор хүргэсэн гэж тооцно.

### Гэрээнд дагаж мөрдөх хууль тогтоомж

Энэхүү Гэрээг Английн хууль тогтоомжоор зохицуулах бөгөөд энэхүү Гэрээтэй холбоотой аливаа маргаан үүссэн тохиолдолд талууд Английн шүүхээр шийдвэрлүүлнэ. Харин шүүхийн хориг тавиулах эсхүл өөрийн өмч хөрөнгө, оюуны өмч, нууц мэдээллийг шүүхээр хамгаалуулахын тулд талууд өөр шүүхэд хандаж болно.

### Гэрээний маргаан шийдвэрлэх

(a) Энэхүү Гэрээтэй холбоотой үүсэх аливаа маргааныг нөхөрсөг хэлэлцээрийн журмаар шийдвэрлэнэ. Талууд бичгээр мэдэгдэл хүргүүлсэн өдрөөс хойш 60 (жаран) хоногийн дотор эсвэл харилцан тохиролцсон өөр хугацаанд маргааныг хэлэлцээрийн журмаар өөрсдөө шийдвэрлэж чадаагүй тохиолдолд маргааныг НҮБ-ын Олон улсын худалдааны эрхзүйн комиссын Арбитрын дүрмийн («ЮНСИТРАЛ-ын дүрэм») дагуу явагдах арбитрын шүүхээр шийдвэрлүүлнэ.

(b) Арбитрчдын тоо 3 (гурав) байна. 3 (гурван) арбитрчдыг ЮНСИТРАЛ-ын дүрмийн дагуу томилно. Арбитрын шүүх явагдах хэл нь англи хэл байна. Энэхүү Гэрээг тайлбарлахын тулд арбитрчид Английн хууль тогтоомжийг хэрэглэнэ. Арбитрын шүүх явагдах газар нь Лондон хот. Арбитрын шүүх ажиллагааг Лондонгийн олон улсын арбитрын шүүх ЮНСИТРАЛ-ын дүрмийн дагуу явуулна.

(c) Арбитрын шийдвэр нь талуудын хувьд эцсийн бөгөөд заавал биелүүлэх ёстой болно. Арбитрын шийдвэрийг албадан биелүүлүүлэх зорилгоор Монгол Улсын шүүхэд өргөдөл гаргана. Өргөдөл гаргаж шийдвэрийн талаар мэдүүлсэнээс хойш 30 (гуч) хоногийн дотор шийдвэрийг биелүүлээгүй, албадан биелүүлээгүй тохиолдолд арбитрын шийдвэрийг албадан биелүүлүүлэх зорилгоор эрх бүхий бусад шүүхэд хандаж болно. Талууд арбитрын шийдвэрийг биелүүлж улмаар шийдвэрийг албадан биелүүлүүлэхэд саад учруулахгүй гэсэн үүрэг хүлээж байна.

(d) МУЕПГ (өөрийн нэрийн өмнөөс болон өөрийн агентлаг, охин компанийн нэрийн өмнөөс) нь шийдвэрийг хаана биелүүлэхээс үл хамааран дээр дурьдсан арбитрын шийдвэрийг заавал биелүүлэх эсхүл албадан биелүүлүүлэхтэй холбогдуулан өмч хөрөнгийн хувьд гүйцэтгэх ажиллагаа явуулахад явцад тухайн харьяалалын шүүхээс хамгаалуулах эрх болон/эсхүл хариуцлагад татагдахгүй байх эрхийг өөрт бий болгохыг шаардах эрхээс өргөж буцалтгүй татгалзаж байна. Хариуцлагад татагдахгүй байх эрхээс татгалзсан нь холбогдох хууль тогтоомжоор зөвшөөрсөн хамгийн их цар хүрээг хамарна гэдгийг талууд хүлээн зөвшөөрч байна.

(e) 10-р зүйлийн заалтууд нь энэхүү Гэрээний хүчинтэй хугацаанд бий болох аливаа маргаан, мөн гэрээ дуусгавар болсоны дараа ч гэсэн энэхүү Гэрээтэй холбоотой үйл ажиллагаатай холбоотой үүсэх маргааны хувьд үргэлжлэн үйлчилнэ.

(ê) Уг гэрээг англи, монгол хэл дээр 2 хувь үйлдэж, талууд гарын үсэг зурж баталгаажуулах ба бүх хувиуд адил тэгш хүчинтэй байна.

Дээрхийг нотлон талуудыг төлөөлж, тэдгээрийн зохих ёсны бүрэн эрхтэй албан тушаалтан энэхүү Гэрээг дээр заасан _____ оны _____ сарын _____ өдөр зохих ёсоор үйлдэв.

**Монгол Улсын Ерөнхий Прокурорын Газар**

Төлөөлж: _____
Нэр: М. Энх-Амгалан
Албан тушаал: Улсын Ерөнхий Прокурор

**К2 Интэллижэнс Лимитэд**

Төлөөлж: _____
Нэр: Жүүлс Кролл
Албан тушаал: Захирлуудын Зөвлөлийн Дарга

CONFIDENTIAL

K2_0000032

## ASSET RECOVERY SERVICES AGREEMENT

THIS ASSET RECOVERY SERVICES AGREEMENT, dated as of  17-09-2018 (this "Agreement"), is made by and between General Prosecutor's Office of Mongolia (the "OPGM"), and K2 Intelligence Limited, an England and Wales Private Limited Company ("K2").

The Agreement is executed in Mongolian and in English. Both versions shall be equally valid.

The OPGM and K2 agree to the following:

1. Services.

████████████████████████████████████████

(b) In performing the Services, K2 will partner up with King & Spalding LLP, and may employ the services of other law firms, third party advisors, and consultants ("Partners") as it deems necessary or appropriate in its sole discretion.

████████████████████████████████████████

2. Compensation.

(a) K2 will be entitled to the following fees, determined as a percentage of the value of each recovered asset (the "Success Fees"):

- Up to $50 million of recovery, K2's Success Fees would equal 1/3 of the value of the recovered assets.
- From $50 to $150 million of recovery, K2's Success Fees would amount to 28 % of the value of the recovered assets.
- Above $150 million of recovery, K2's Success Fees would amount to 20% of the value of the recovered assets.

The value of an asset will be measured at the date of recovery. Recovery is defined as the transfer of ownership of a particular asset to the OPGM of Mongolia or a settlement between a Subject and the OPGM of Mongolia which K2 and its Partners would have facilitated. Legal fees and all professional fees and expenses incurred by the Partners associated with the recovery are also included in the above compensation structure.

(b) K2 and its legal partners in consultation with the OPGM, will establish an escrow account with a financial institution located within a jurisdiction that is mutually acceptable to both parties into which recovered and repatriated cash assets or cash proceeds from disposition of recovered assets or settlements are to be deposited. Upon approval by the OPGM, the Success Fees will be paid to K2 from

the escrow account, and the balance of the funds shall be distributed persistent to the OPGM's instruction on to the government of the Mongolian People's Republic.

(c) If the proceeds from a settlement or a recovery that is facilitated by K2 are received in accounts held by the Mongolian government or any of its bodies, K2's success fee will be payable within 30 days of the receipt of such proceeds.

3. Term and Termination.

The term of this Agreement shall be for the period commencing as of the date hereof and shall continue in full force and effect until terminated. This Agreement may be terminated (a) by mutual written consent of the parties, or (b) by either party with or without cause, upon thirty (30) days' written notice to the other party. Termination of this Agreement shall not affect the monetary rights and obligations of the parties that have accrued prior to the date of such termination.

4. Exclusivity.

K2 shall be the exclusive service provider for the OPGM for the purpose of providing the Services. During the term of this Agreement, the OPGM shall not carry on discussions or enter into any contract or arrangement with any other party involving the performance of services that are similar to the Services without prior written consent of K2.

5. Confidentiality.

(a) Each party shall keep secret and treat in strictest confidence all Confidential Information and not use the Confidential Information for any purpose except related to the performance of its obligations under this Agreement. "Confidential Information" means all nonpublic documentation and information of any kind and in whatever medium that is directly or indirectly provided or made available to a party by or on behalf of the other party relating to such other party or its affiliates.

(b) Information shall not constitute Confidential Information if the party seeking to disclose or use it can demonstrate that; (i) the information has been independently derived by such party; (ii) such information has become publicly known other than as a result of a breach of this Agreement by such party; (iii) such information is or was received by such party without restriction from a third party lawfully in possession of such information and lawfully empowered to disclose such information; or (iv) such information was rightfully in the possession of such party without restriction prior to its disclosure by the disclosing party.

(c) Notwithstanding anything herein to the contrary, each of the parties may disclose Confidential Information; (i) to the extent required pursuant to any order of a court of competent jurisdiction or regulatory authority; (ii) to any person acting in a professional capacity with an obligation to keep such information confidential on terms and conditions at least as restrictive than those set out in this Section 8; (iii) to the extent required pursuant to the laws or regulations of any country with jurisdiction over the affairs of such party; (iv) to such persons to whom such disclosure is necessary in order to enable such party to exercise its rights and to perform its obligations under this Agreement in accordance with its terms; provided that such party shall take all proper and reasonable measures to require that such

persons keep secret and treat as confidential all such Confidential Information in accordance with this Section 8.

6. Severability.

If any clause, provision or term of this Agreement is held or found to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not affect the validity, legality or enforceability of any other clause, provision or term of this Agreement.

7. Waiver.

No failure or delay of any party in exercising any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such right or power, or any course of conduct, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of the parties hereunder are cumulative and are not exclusive of the rights or remedies which they would otherwise have hereunder. Any agreement on the part of any party to any such waiver shall be valid only if set forth in a written instrument executed and delivered by a duly authorized officer on behalf of such party.

8. Notices.

All notices under this Agreement, including notices of address change, must be in writing and will be deemed to have been given when sent by (a) registered mail, return receipt requested, or (b) a nationally recognized overnight delivery service (such as Federal Express), to the applicable party's representative as listed above.

9. Governing Law.

This Agreement is governed by English law and the parties submit to the exclusive jurisdiction of the English courts in relation to any dispute (contractual or non-contractual) concerning this Agreement save that either party may apply to any court for an injunction or other relief to protect its property, intellectual property or Confidential Information.

10. Dispute Resolution.

(a) Any disputes between the parties arising out of or in connection with this Agreement shall be settled by the parties through negotiation in good faith. If such dispute cannot be satisfactorily resolved by the parties themselves through such good-faith negotiation within sixty (60) days of the date of a party's request in writing for such negotiation, or such other time period as may be agreed, then the dispute shall be resolved by binding arbitration in accordance with the procedures under the Arbitration Rules of the United Nations Commission on International Trade Law (the "UNCITRAL Rules") as in force at the time of the dispute.

(b) The number of arbitrators shall be three (3). The three (3) arbitrators shall be appointed in accordance with the UNICITRAL Rules. The language of the arbitration shall be English. The arbitrators shall apply English law to the interpretation of this Agreement. The place of arbitration will be London,

CONFIDENTIAL                                                                                                    K2_0000035

United Kingdom. The arbitral proceedings shall be administered under the UNCITRAL Rules by the London Court of International Arbitration.

(c) The arbitral award shall be final and binding on the parties. Judgement on the award may be entered by any court having competent jurisdiction, **provided** that an arbitral award shall first be presented in an appropriate court of Mongolia for execution and enforcement. If such execution and enforcement has not occurred within thirty (30) days of presentation, the award may be presented in any other court having competent jurisdiction. The parties hereby commit to fulfill the execution and enforcement of the arbitral award and shall not raise any defense to its execution and enforcement.

(d) OPGM (both for itself and for any of its agencies or instrumentalities) hereby unconditionally and irrevocably waives any rights to claim jurisdictional immunity and/or immunity from execution of their property in a proceeding concerning the recognition as binding for any purpose, or for the enforcement, of an award made pursuant to the above arbitration, wherever the award was made. The parties agree that this waiver of immunity shall have the fullest scope permitted under the applicable laws.

(e) The provisions of this Section 10 shall continue to apply to any dispute that arises during the term of this Agreement or any dispute that occurs after the termination of this Agreement in regard to activities arising out of or in connection with this Agreement.

IN WITNESS WHEREOF, each party has caused this Agreement to be duly executed on its behalf by its duly authorized officers as of the date first written above.

General Prosecutor's Office of Mongolia

By: _[signature]_
Name: _[illegible]_
Title: _[illegible] of Mongolia_

K2 Intelligence Limited

By: _[signature]_
Name: Jules Kroll
Title: Chairman