# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE APPLICATION OF SUKHBAATAR
BATBOLD FOR AN ORDER PURSUANT TO
28 U.S.C. § 1782,

*Petitioner.*

Case No. 21-mc-00218-RA-OTW

### DECLARATION OF KH. JARGALSAIKHAN IN FURTHER SUPPORT OF SUKHBAATAR BATBOLD'S APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

I, Kh.Jargalsaikhan, declare as follows:

### INTRODUCTION

1.       I am currently a Partner of Mongol Advocate Law Firm, based in Mongolia. I was admitted to practice law in Mongolia in 2011. I act as counsel to Sukhbaatar Batbold in proceedings currently pending in multiple District Civil Courts of First Instance in Mongolia.

2.       I submit this Declaration in support of Mr. Batbold's Application for an Order Seeking Discovery Pursuant to 28 U.S.C. Section 1782 (the "Application") permitting him to issue a subpoena for the production of documents and deposition testimony from K2 Intelligence or K2 Integrity (collectively "K2"). Originally Mr. Batbold's application sought discovery to aid his defense in proceedings pending against him in London, Hong Kong, Jersey, Singapore, and Mongolia (the "Global Proceedings").[1] That discovery pertained to an investigation K2 conducted

---

[1]  Since Mr. Batbold filed his petition, a further action was brought against him in the British Virgin Islands ("BVI"). I understand K2 has agreed that discovery produced in this action may be used by Mr. Batbold in the BVI action.

into Mr. Batbold and others, the purported results of which formed the basis of all of the Global Proceedings.

3.      Unless otherwise stated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by Mr. Batbold and/or professionals retained by Mr. Batbold, and upon my review of relevant documents. If called as a witness, I could and would testify competently regarding the information set forth herein.

## MR. BATBOLD'S AFFIRMATIVE MONGOLIAN ACTIONS

4.      On May 5, 2022, Mr. Batbold intervened as plaintiff in an action pending in the Chingeltei District Civil Court of First Instance against Blue News LLC, the owner of a website entitled www.politnews.mn (the "First Action"). On May 11, 2022, Mr. Batbold initiated an action in the Chingeltei District Civil Court of First Instance against the three purported plaintiffs in the Global Proceedings: Erdenes Oyu Tolgoi LLC, the Agency for Policy Coordination on State Property of Mongolia, and Erdenet Mining Corporation (the "Second Action"). The cases were registered as a single civil action (effectively consolidated) for consideration by the Court (together the "Affirmative Mongolian Actions").

5.      In the First Action, Mr. Batbold has intervened as plaintiff in an existing defamation suit against Blue News LLC arising out of Blue News's reporting. In April 2022, Blue News's website www.politnews.mn published a series of news articles about Mr. Batbold. Those articles alleged Mr. Batbold conducted illegal activities with respect to the Erdenet and Oyu Tolgoi mines through supposed proxies and companies under his control. The articles state that Mr. Batbold's supposed wrongful conduct caused damages to the entities Erdenes Oyu Tolgoi LLC, the Agency for Policy Coordination on State Property of Mongolia, and to Erdenet Mining Corporation. These allegations are the same as those advanced in the Global Proceedings and in K2's purported investigation.

6.    Mr. Batbold contends Blue News's articles contain lies and libel. Certain articles do nothing more than repeat the false allegations he is defending against in the Global Proceedings—allegations based on K2's investigation. In fact, in one article dated April 11, 2022, www.politnews.mn published verbatim and in full the statement of claim filed against Mr. Batbold in the BVI.[2] The BVI statement of claim was itself based on K2's alleged investigation.

7.    Mr. Batbold seeks a court order in Mongolia forcing Blue News LLC to retract the libelous and defamatory news stories published on its website www.politnews.mn. To prevail in the First Action, Mr. Batbold will need to prove (among other things) that the allegations Blue News produced were false. That will require that he disprove and debunk the allegations in the BVI proceeding and K2's own investigation that form the purported factual basis for the allegations levied in the BVI proceeding and all other Global Proceedings.

8.    In the Second Action, Mr. Batbold alleges Erdenes Oyu Tolgoi LLC, the Agency for Policy Coordination on State Property of Mongolia, and Erdenet Mining Corporation are well aware their names are being used in illegal Global Proceedings without proper authorization, but that they have failed to act to put an end to those proceedings. Mr. Batbold further alleges that Erdenes Oyu Tolgoi LLC, the Agency for Policy Coordination on State Property of Mongolia, and Erdenet Mining Corporation's inaction has injured Mr. Batbold and caused damage to his good name and to his business reputation. Moreover, he alleges that the inaction on the part of these entities has led to media sites such as www.politnews.mn publishing the aforementioned libelous stories at issue in the First Action. In the Second Action, Mr. Batbold seeks a court order requiring

---

[2]    This is the same statement of claim I understand was filed in a now-discontinued Section 1782 petition seeking discovery from JPMorgan Chase Bank, N.A. *See Ex Parte Application of Agency for Policy Coordination on State Prop., et al.*, No. 21-mc-178 (VSB), Dkt. 23-2.

these entities to put an end to the illegal actions worldwide that were undertaken in their names without the requisite authority.

## THE REQUESTED DISCOVERY IS RELEVANT TO THE AFFIRMATIVE MONGOLIAN ACTIONS

9.    I understand Mr. Batbold's Application was granted by this Court on October 6, 2021. Dkt. 53.  The Court granted Mr. Batbold's request for evidence from K2, including regarding: (a) the sources of funding for the K2 investigation and the global litigation against him; (b) the identity of the party or parties who authorized the K2 investigation and retained K2's services; and (c) exculpatory documents in K2's possession uncovered over the course of its investigation into Mr. Batbold.

10.    I understand Mr. Batbold has received limited documents from K2 to date, including certain information about the identities of the parties who authorized the K2 investigation and information regarding the sources of funding for the K2 investigation.  However, I understand K2 has withheld numerous documents, including its underlying source documents that have not already been filed, and communications reflecting *inter alia* the genesis of its investigation, the motive behind its investigation, the individuals or entities that initiated, directed, and funded its investigation.

11.    The evidence Mr. Batbold has received to date, and the evidence I understand he continues to seek, is relevant in the Affirmative Mongolian Actions for multiple reasons.

12.    *First,* Mr. Batbold has brought the Affirmative Mongolian Actions to remedy the damage he has suffered through the Global Proceedings.  He denies the entirety of the allegations advanced in those cases—allegations which were based on the purported investigative work of K2. Mr. Batbold firmly believes that the Global Proceedings are part of a political smear campaign against him, designed to spread misinformation and to tarnish his reputation.  In the Affirmative

4

Mongolian Actions, Mr. Batbold will need to demonstrate that the Global Proceedings were premised on false allegations from K2's investigation, and that the Global Proceedings and K2's investigation were commenced without proper authorization.

13.    To that end, introducing evidence of how the K2 investigation came to be, who in Mongolia (or otherwise) authorized it, who funded it, and chipping away at the investigation's probative value will aid Mr. Batbold in discrediting the allegations against him. If he is able to do that, the Mongolian court would be more likely to grant Mr. Batbold his requested relief in the Affirmative Mongolian Actions, ultimately confirming the allegations against him are false. Moreover, in the Second Action in particular, whether the three defendant entities authorized King & Spalding LLP or K2 to take action against Mr. Batbold is front and center: for Mr. Batbold to successfully convince the Mongolian court to order these entities to denounce and withdraw the litigations worldwide, Mr. Batbold needs evidence regarding who actually authorized K2 and the litigations against him. This evidence, which could include communications between K2 and individuals and entities directing, controlling, and funding its investigation, could allow Mr. Batbold to clear his name in his home country.

14.    *Second*, Mr. Batbold seeks non-privileged documents and communications from K2's years'-long investigation. This evidence—which could include exculpatory information and evidence confirming K2's investigation was designed to tarnish Mr. Batbold and not to uncover the truth—will enable Mr. Batbold to prove to the Mongolian courts that the results of K2's investigation were false and fraudulent, and that the Global Proceedings, which are based on K2's investigation, are without merit. This, in turn, would support his arguments in the Affirmative Mongolian Actions—for example, that news articles published about him, which recite the Global

Proceedings' allegations, are false and defamatory and that the proceedings worldwide have been commenced against him purely as a vehicle to discredit his name.

15.     This discovery is highly relevant to Mr. Batbold's anticipated cases, theories, and strategy in the Affirmative Mongolian Actions. Importantly, Mongolian courts do not presently have jurisdiction over K2. Without the aid of the federal court in New York, Mr. Batbold may not be able to access this important discovery from K2—the investigator who created the very allegations of misconduct the Affirmative Mongolian Actions seek to disprove.

## MONGOLIAN COURTS WILL LIKELY CONSIDER EVIDENCE OBTAINED THROUGH SECTION 1782

16.     I understand that Mr. Batbold intends to use the evidence granted pursuant to Section 1782 in the Affirmative Mongolian Actions.

17.     The Affirmative Mongolian Actions are adjudicative in nature, and the Mongolian courts will make legal and factual determinations after considering the evidence before it. As a plaintiff in the proceedings, Mr. Batbold is entitled to supplement the evidentiary record at any time before the hearing on the merits and can even introduce newly discovered evidence later up and until when the case is adjudicated by first instance court . Accordingly, the first instance court of Mongolia will be receptive to relevant evidence submitted for its consideration.

18.     To my knowledge, and as this Court has already recognized in granting Mr. Batbold's Application, there are no laws or policies that would prevent the Mongolian courts from considering the evidence obtained through Section 1782, and a request for discovery would not circumvent any Mongolian proof-gathering restrictions. Moreover, the discovery sought here would not be barred by any privilege under Mongolian law.

19.     Therefore, I have no basis to believe the Mongolian courts would reject the evidence requested by Mr. Batbold under Section 1782.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  July 21, 2022
Ulaanbaatar, Mongolia

Kh. Jargalsaikhan