UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF SUKHBAATAR BATBOLD FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

Case No. 1:21-MC-00218-RA-OTW

# SECOND DECLARATION OF DARRYL G. STEIN

I, DARRYL G. STEIN, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney duly admitted to practice in the United States District Court for the Southern District of New York, and I am a Principal with the law firm Kobre & Kim LLP ("Kobre & Kim") in New York, NY.  Kobre & Kim is counsel for K2 Integrity ("K2").

2. I make this declaration in support of K2's Memorandum of Law in Further Support of Respondent K2's Motion to Quash Rule 45 Subpoenas and Motion for Protective Order and in Opposition to Batbold's Motion to Compel Discovery.

3. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge and experience, or upon my review of records maintained by Kobre & Kim in the regular course of its representation of K2.  Insofar as they are within my own knowledge, the facts and matters set forth herein are true to the best of my own knowledge and belief.

4. In the case *Agency for Policy Coordination on State Property of Mongolia and others v. Sukhbaatar Batbold and others* (Case No. HC/S 1145/2020) in the General Division of the High Court of the Republic of Singapore (the "Singapore Proceeding"), I have been informed by Rev Law LLC, who previously acted as counsel for claimants until July 15, 2022, that a hearing was scheduled to take place on July 29, 2022 on an application by

certain respondents (but not Mr. Batbold) to strike out claimants' application.

5. In the case *Agency for Policy Coordination on State Property and others v. Sukhbaatar Batbold and others* (Case No. BVIHCOM2021/0224) in the Eastern Caribbean Supreme Court, in the High Court of Justice, Virgin Islands, Commercial Court, I have been informed by Andrew Gilliland, who previously acted as counsel for claimants in that proceeding until July 8, 2022, that a hearing on an application by certain respondents (but not Mr. Batbold) to extend time to file a defense will be held on September 28, 2022. I have also been informed by Mr. Gilliland that those same respondents have confirmed that they will seek to apply by September 5, 2022 permission to serve the claimants by alternative methods, and they have confirmed that they will use their "reasonable endeavours" to have that application also heard on September 28, 2022. A true and correct copy of the BVI Court order setting these deadlines is attached hereto as **Exhibit A**.

6. Attached hereto as **Exhibit B** is a true and correct copy of a letter filed by King & Spalding LLP in *Agency for Policy Coordination on State Prop., et al. v. JPMorgan Chase Bank, N.A.*, No. 21-mc-178 (S.D.N.Y.) on March 16, 2022 at ECF 29.

7. Attached hereto as **Exhibit C** is an archived version of the profile of Nicholas Cherryman that I understand to have appeared on the website of King & Spalding in or around December 2018 that I obtained from the Wayback Machine (http://webarchive.org). I understand from the Wayback Machine website that this is an archived version of Mr. Cherryman's profile that appeared on the website kslaw.com in or around December 2018.

8. Attached hereto as **Exhibit D** is a true and correct copy of the Solicitors Regulation Authority profile of Sarah Yasmin Walker, accessed on sra.org.uk on July 30, 2022.

9. Attached hereto as **Exhibit E** is a true and correct copy of Sarah Yasmin Walker's profile on the website of King & Spalding, accessed on kslaw.com on August 1, 2022.

10. Attached hereto as **Exhibit F** is a true and correct copy of a July 26, 2022 letter from Batbold's counsel to me regarding discovery in connection with this Application.

11. Attached hereto as **Exhibit G** is a true and correct copy of the document produced by K2 at bates range K2_0000026 through K2_0000027, which was produced with redactions for privilege.

12. Attached hereto as **Exhibit H** is a true and correct copy of an article by Allison Frankel from Reuters.com, entitled "Gibson Dunn lobs accusations at King & Spalding in Mongolian corruption cases," dated July 20, 2022, which is available at: https://www.reuters.com/legal/litigation/gibson-dunn-lobs-accusations-king-spalding-mongolian-corruption-cases-2022-07-19/.

**Examples of Underlying Source Documents**

13. Attached hereto as **Exhibit I** is a true and correct copy of the document produced by K2 at bates range K2_0004796 through K2_0004813 ("Financial Statement"). Of the 1,269 underlying source documents that K2 produced, 5 contain the phrases "financial statements," "for the financial," "year ended," "registration number," and "director." Of the 18,370 underlying source documents that K2 withheld as privileged and logged, 299 contain the phrases "financial statements," "for the financial," "year ended," "registration number," and "director." Based on a review of a sample of 100 of the 299 withheld documents conducted by my colleague Emily Lin, all are similar in form to the Financial Statement, in that the first page of each such document lists the name of the company, the registration number, and the date range covered in the financial statement, and each document also contains a table of contents and a directors' statement.

14. Attached hereto as **Exhibit J** is a true and correct copy of the document produced by K2 at bates range K2_0001319 to K2_0001319, which has been redacted pursuant to this Court's Individual Rules and Practices in Civil Cases Section IV.A and Rule 5.2(a). Of the 1,269 underlying source documents that K2 produced, 87 documents contain the phrases "deposit account statement" and "TDB." Of the 18,370 underlying source documents that K2 withheld as privileged and logged, 626 documents contain the phrase "Deposit account statement." Based on a review of a sample of 100 of the 626 withheld documents conducted by my colleague Emily Lin, all are similar in form to the Bank Account Statement, in that each such document has the TDB logo in the top left corner.

15. Attached hereto as **Exhibit K** is a true and correct copy of the document produced by K2 at bates range K2_0000091 through K2_0000093 ("Companies Registry Form"). Of the 1,269 underlying source documents that K2 produced, 137 contain the phrases "Companies Registry," "Form," "Company Number," and "Company Name." Of the 18,370 underlying source documents that K2 withheld as privileged and logged, 2,004 contain the phrases "Companies Registry," "Form," "Company Number," and "Company Name." Based on a review of a sample of 100 of the 2,004 withheld documents conducted by my colleague Emily Lin, all are similar in form to the Companies Registry Form, in that each such document has the Companies Registry logo in the top left corner and a box containing the Company Number in the upper right corner.

16. Attached hereto as **Exhibit L** is a true and correct copy of the document produced by K2 at bates range K2_0000430 through K2_0000431 ("Register of Companies Search Report"). Of the 1,269 underlying source documents that K2 produced, 87 contain the phrases "Register of Companies Search Report" and "This search is accurate as at the Search Date above." Of the 18,370 underlying source documents that K2 withheld as privileged and logged, 477 contain the phrases "Register of Companies Search Report" and "This search is accurate as at the Search Date above." Based on a review of a sample of 100 of the 477 withheld documents conducted by my colleague Emily Lin, all are similar in form to the Register of Companies Search Report, in that each such document has the BVI Financial Services Commission (FSC) logo in the top left corner next to the labels "BVI Financial Services Commission, Registry of Corporate Affairs" and "Register of Companies Search Report."

17. Attached hereto as **Exhibit M** is a true and correct copy of the document produced by K2 at bates range K2_0007784 through K2_0007787 ("TraceIQ Search Results") which has been redacted pursuant to this Court's Individual Rules and Practices in Civil Cases Section IV.A and Rule 5.2(a). Of the 1,269 underlying source documents that K2 produced, 12 contain the phrases "TraceIQ – Search results" and "Subject Data." Of the 18,370 underlying source documents that K2 withheld as privileged and logged, 60 contain the phrases "TraceIQ – Search results" and "Subject Data." Based on a review

of all 60 withheld documents conducted by my colleague Emily Lin, all are similar in form to the TraceIQ Search Results, in that each such document has the headers "Subject Data," "Residency," "Mortality Alert," and "Property" in the search results.

18. Attached hereto as **Exhibit N** is a true and correct copy of the document produced by K2 at bates range K2_0004388 through K2_0004389 ("LexisNexis Person Investigations Results"). Of the 1,269 underlying source documents that K2 produced, 10 contain the phrases "LexisNexis" and "Person Investigations Results." Of the 18,370 underlying source documents that K2 withheld as privileged and logged, 73 contain the phrases "LexisNexis" and "Person Investigations Results." Based on a review of all 73 withheld documents conducted by my colleague Emily Lin, all are similar in form to the LexisNexis Person Investigations Results, in that each such document displays the "Search Terms Used," which includes the Last Name and First Name of the search target and copyright details for LexisNexis at the bottom of the last page.

19. Attached hereto as **Exhibit O** is a true and correct copy of the document produced by K2 at bates range K2_0005673 through K2_0005674 ("HM Land Registry Property Register"). Of the 1,269 underlying source documents that K2 produced, 39 contain the phrases "HM Land Registry," "A: Property Register," and "There is no application or official search pending against this title." Of the 18,370 underlying source documents that K2 withheld as privileged and logged, 848 contain the phrases "HM Land Registry," "A: Property Register," and "There is no application or official search pending against this title." Based on a review of a sample of 100 of the 848 withheld documents conducted by my colleague Emily Lin, all are similar in form to the HM Land Registry Property Register, in that each such document contains a paragraph at the top of the page stating the document is "a print of the view of the register obtained from HM Land Registry showing the entries subsisting in the register" at the access time, and a title number.

**Discovery Already Undertaken by K2**

20. Following the April 26, 2022 status conference in this matter, K2 ran searches for "Benjamin W/2 Moyle", "Chuluunkhuu W/2 Ganbat", "Khaltmaagin W/2 Battulga",

and "Otgonjargal W/2 Moyle" in the addressee fields (such as to, from, cc, and bcc) of the emails that K2 collected from seven custodians in November 2021 ("Name Searches").

21. The Name Searches included families and returned a total of 652 documents, which included emails and attachments.

22. On June 1, 2022, K2 produced to Batbold, subject to the Protective Order entered in this action, 237 non-privileged emails and attachments that were returned by the Name Searches. These 237 documents include, among other documents, calendar invitations, emails containing news articles sent without comment, and emails sent to a probulica.org email address.

23. On June 1, 2022, K2 produced a privilege log for the 415 emails and attachments that were returned by the Name Searches and withheld from production on June 1, 2022 as privileged ("Email Privilege Log").

24. Of the 415 documents in the Email Privilege Log, 29 are unrelated to the Mongolian investigation but nonetheless hit on the terms provided by Batbold. These are indicated in the Email Privilege Log at Rows 36, 37, 38, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 106, 167, 168, 169, 283, 289, and 290.

25. On June 20, 2022, K2 produced to Batbold, subject to the Protective Order entered in this action, 1 email that had been included in the Email Privilege Log as to which privilege was no longer asserted.

26. In total, K2 produced to Batbold, subject to the Protective Order entered in this action, 238 non-privileged emails and attachments that were returned by the Name Searches.

27. I met and conferred with Batbold's counsel following production of the Email Privilege Log, including on telephonic conferences on June 2, 9, and 10, 2022. To the best of my recollection, Batbold's counsel did not ask any questions or raise any issues about the Email Privilege Log or any entries on the Email Privilege Log on any of these conferences. Batbold's counsel did not mention the name "Richard Messick" on any of

these conferences.

28. I met and conferred with Batbold's counsel following production of the Email Privilege Log, including on telephonic conferences on June 2, 9, and 10, 2022. I conferred with Batbold's counsel about the English privileges asserted in this action only on a telephonic conference on June 10, 2022. On the June 10, 2022 telephonic conference, Batbold's counsel never addressed *Lyell* nor *Palermo*, but Batbold's counsel referred K2 to the declarations of Patrick Doris previously filed in this action. In email correspondence about the English privileges asserted in this action, Batbold's counsel never addressed *Lyell* or *Palermo*, but Batbold's counsel referred on June 11, 2022 to the declarations of Patrick Doris previously filed in this action.

29. In the course of the parties' meet and confer process before Mr. Batbold's July 15, 2022 motion to compel, Batbold's counsel did not propose that K2 produce documents without reviewing for privilege.

30. On July 12, 2022, Batbold's counsel sent me a letter, which Lee Crain attached to his July 15, 2022 declaration as Exhibit 32, that stated, in part, "Even now, you refuse to engage in a serious discussion about specific terms, instead identifying vague categories of 'banks and corporate service providers' that are 'overbroad,'" referring to the June 29, 2022 letter that I sent to Batbold's counsel.

31. On July 14, 2022, I sent a letter to Batbold's counsel, which Lee Crain attached to his July 15, 2022 declaration as Exhibit 34, that stated, in part, "while K2 continues to oppose undertaking any further searches for these reasons and those set forth in support of the motion to quash, we enclose with this letter a narrowed list of search terms as described in our June 29, 2022 letter." A true and correct copy of that narrowed list of search terms is attached hereto as **Exhibit P** ("K2 Search Terms").

32. Of the documents included on K2's privilege log of underlying source documents that I provided to Batbold on June 29, 2022, 7,454 contain one or more of the K2 Search Terms.

33. Attached hereto as **Exhibit Q** is a true and correct copy of an article from Reuters,

entitled "Ex-Mongolian prime minister Khurelsukh wins presidential election in landslide," dated June 9, 2021, which is available at: http://www.reuters.com/world/asia-pacific/former-mongolian-prime-minister-khurelsukh-wins-presidency-2021-06-09/.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd day of August, 2022.

/s/  Darryl G. Stein
Darryl G. Stein
