UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF SUKHBAATAR BATBOLD FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 | 21-MC-218 (RA) (OTW) <br><br> <u>OPINION & ORDER</u> |

RONNIE ABRAMS, United States District Judge:

Petitioner Sukhbaatar Batbold, the former prime minister of Mongolia, filed this application pursuant to 28 U.S.C. § 1782 seeking discovery from Respondent K2 Integrity for use in several foreign proceedings. On October 6, 2021, Magistrate Judge Wang granted Petitioner's application (the "Initial Order"), and on May 18, 2022, she issued an order compelling discovery (the "Discovery Order"). Pending before the Court are K2's objections to both the Initial Order granting the Section 1782 application and the subsequent Discovery Order. For the following reasons, K2's objections are overruled, and Judge Wang's orders are affirmed in full.

## BACKGROUND

### I.    The Foreign Proceedings Against Batbold

Respondent K2, an international risk and investigations firm, was retained by the Mongolian Office of the Prosecutor General in 2018 "to assist with tracing and recovering assets misappropriated from the state of Mongolia through corrupt transactions" connected to Mongolian state-owned mining assets. Dkt. 33 ("Kroll Decl.") ¶ 4. K2 claims to have uncovered evidence that a state-owned mining company, the Erdenet Mining Corporation, sold hundreds of millions of dollars of copper assets to companies owned by a family with close ties to Batbold during the time the mining company was under his control. *Id.* ¶ 12. K2 asserts that it conducted its investigation

with the expectation that its investigation "would result in and be used in connection with litigation." *Id.* ¶ 6.

In late 2020, Erdenet and a second Mongolian state-owned mining company, Erdenes Oyu Tolgoi LLC, along with a Mongolian government agency, the Agency for Policy Coordination on State Property of Mongolia (the "Foreign Plaintiffs"), initiated lawsuits against Batbold in Mongolia, London, Singapore, Hong Kong, the Bailiwick of Jersey, and New York. Dkt. 17 ("Decl. of Batbold's Singapore Counsel") ¶ 3; Dkt. 18 ("Decl. of Batbold's U.K. Counsel") ¶ 3; Dkt. 19 ("Decl. of Batbold's Hong Kong Counsel") ¶ 3; Dkt. 20 ("Decl. of Batbold's Counsel in Jersey") ¶ 3; Dkt. 21 ("Decl. of Batbold's Counsel in Mongolia") ¶ 4 (together, "Decls. of Batbold's Foreign Counsel"); Dkt. 5-2 (Batbold Subpoena). The Mongolian civil suit accused Batbold of corruptly diverting funds from a Mongolian mining project during his time as prime minister. Kroll Decl. ¶¶ 8, 12–13. The lawsuits in the other jurisdictions sought to attach Batbold's property in support of a future judgment in the Mongolian proceeding. Decls. of Batbold's Foreign Counsel; Kroll Decl. ¶ 14. Courts in London, Singapore, Hong Kong and Jersey granted freezing injunctions against Batbold on the basis of property that he allegedly owns in the relevant jurisdictions. Decls. of Batbold's Foreign Counsel. K2's executive chairman, Jules Kroll, submitted affidavits in each of the proceedings outside of Mongolia that included "information about Mr. Batbold's corrupt acts" and the documents uncovered as part of K2s investigation. Kroll Decl. ¶ 14.

The parties dispute the origins and the objectives of K2's investigation. K2 asserts that it was retained by the Mongolian Office of the Prosecutor General and had been actively conducting its investigation since 2018 alongside King & Spalding. Kroll Decl. ¶¶ 4, 6. According to Batbold's counsel, however, the Office of the Prosecutor General never authorized King & Spalding to

prosecute the actions or represent the Foreign Plaintiffs. Dkts. 79, 81. Batbold's counsel further argue that K2 "obscured the origins of its investigation," and that the lawsuits are politically motivated and were aimed at discrediting him before the 2021 Mongolian presidential election. Dkt. 110 at 5, 7. Batbold seeks discovery from K2 in part "to obtain evidence of the genesis of K2's investigation, including who hired K2" and "what its investigation uncovered." Pet'r's Opp'n to K2's Objs. ("Response") at 7.

The London, Jersey, Hong Kong and Singapore proceedings against Batbold were stayed prior to the filing of this application, Decls. of Batbold's Foreign Counsel, and on December 6, 2021, during the pendency of this action, the Mongolian proceeding was dismissed, Dkt. 69. Batbold initiated two civil actions in Mongolia against the Foreign Plaintiffs and a Mongolian news outlet in May 2022, alleging defamation and seeking a court order requiring the Foreign Plaintiffs to end the non-Mongolian proceedings against him. Dkt. 139. On August 30, 2022, Batbold filed an application in Hong Kong to discharge the injunction entered against him asserting that "the Hong Kong proceeding was commenced and pursued without authority from the purported plaintiffs." Dkt. 151. Batbold also filed letters with the Court purporting to show that King & Spalding "had never been properly authorized to pursue litigation against Mr. Batbold." Dkt. 79.

## II.     Batbold's Section 1782 Application

Batbold filed the instant application pursuant to 28 U.S.C. § 1782 on March 9, 2021, seeking evidence from K2 in this district to support his defense in the foreign proceedings. Specifically, Batbold seeks information on the source of funding for K2's investigation, the identity of the parties who authorized the K2 investigation, as well as documents that may contain exculpatory information that Batbold could use to defend himself in the foreign litigations. Decl.

of Batbold's Singapore Counsel ¶¶ 8–12; Decl. of Batbold's U.K. Counsel ¶¶ 5–7; Batbold Subpoena. On March 23, 2021, the Court referred the application to Judge Wang.

On October 6, 2021, Judge Wang granted Batbold's application, finding that he had satisfied Section 1782's statutory requirements and that the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) weigh in favor of Batbold's application. The Initial Order authorized Batbold to serve its proposed subpoenas and set a deadline for K2 to file a motion to quash. On November 4, 2021, K2 raised objections to Judge Wang's Initial Order, but subsequently withdrew its objections without prejudice after the Mongolian action against Batbold was dismissed. On April 26, 2022, Judge Wang held a conference with the parties, during which she heard argument on the scope of discovery and directed K2 to produce non-privileged documents with information on the source of K2's funding, the identity of K2's clients, and K2's communications with several third parties. Hr'g Tr. 39:17–40:19, 43:10–20, 51:16–19, 70:9–16. On May 18, 2022, in response to a letter update from the parties, Judge Wang issued the Discovery Order compelling K2 to begin producing or logging documents in response to Batbold's discovery requests while denying K2s request to stay discovery. On May 26, 2022, K2 raised four objections to Judge Wang's October 6, 2021 Order granting discovery pursuant to Section 1782 and her May 28, 2022 order compelling discovery. Dkt. 101 ("Objections"). On June 17, 2022, Batbold filed his response to the Objections, and on June 24, 2022, K2 filed a reply. The parties subsequently moved before Judge Wang to compel discovery and quash Batbold's subpoenas. K2 has produced or logged documents responsive to Batbold's requests, though the parties dispute the extent and the relevance of K2's productions. Dkt. 131 at 1–2 (Pet.'s Mot. to Compel); Dkt. 146 at 1–2 (Resp't's Mot. to Quash).

## LEGAL STANDARDS

### I.     Standard of Review

A district court may only set aside a magistrate judge's order on a nondispositive issue if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). Clear error may only be found where the court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006). "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *In re Iraq Telecom Ltd.*, No. 18-MC-458 (LGS) (OTW), 2020 WL 1047036, at *1 (S.D.N.Y. Mar. 4, 2020) (internal citations omitted). "[A] party seeking to overturn a magistrate judge's decision thus carries a heavy burden." *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, No. 04-CV-6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007). By contrast, a magistrate judge's order on a dispositive issue is reviewed *de novo* pursuant to Rule 72(b). *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.3d 522, 525 (2d Cir. 1990).

The parties dispute the proper standard of review to be applied to Judge Wang's Initial Order granting Batbold's application. The Second Circuit has not addressed whether a magistrate judge's ruling on a Section 1782 application is dispositive within the meaning of Rule 72. But most courts in this District review magistrate judges' opinions granting or denying Section 1782 applications for clear error, concluding that such rulings are "ancillary" to the foreign proceedings and "do[] not dispose of the underlying claims and defenses in the foreign tribunal," thereby making them non-dispositive. *In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) (noting that "[m]ost lower courts[ ] ... have found that such rulings are *not* dispositive and are therefore subject to review only for clear error"); *see In re Evenstar*

*Master Fund SPC for & on behalf of Evenstar Master Sub-Fund I Segregated Portfolio*, No. 20-MC-418 (CS) (JCM), 2021 WL 5498283, at *1 (S.D.N.Y. Nov. 23, 2021) ("[R]ulings on § 1782 applications are [] nondispositive matters."); *In re Iraq Telecom Ltd.*, 2020 WL 1047036, at *1 (S.D.N.Y. Mar. 4, 2020) ("A deferential standard of review applies because the matter is nondispositive."); *In re Application of Shervin Pishevar for an Ord. to take Discovery for use in Foreign Proc. Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 301 (S.D.N.Y. 2020) ("[T]he Court's decision on a Section 1782 application is non-dispositive…"); *see also In re Pons*, No. 19-23236-MC, 2020 WL 1860908, at *4 (S.D. Fla. Apr. 13, 2020), *aff'd sub nom. Pons v. AMKE Registered Agents, LLC*, 835 F. App'x 465 (11th Cir. 2020) (The ruling on the 1782 motion "was nondispositive of any claims or defenses because the Parties' claims and defenses are solely before the Ecuador Family Court.").

K2 argues instead that Judge Wang's Initial Order should be reviewed *de novo*, relying on the Ninth Circuit recent decision in *CPC Pat. Techs. Pty Ltd. v. Apple, Inc.*, 34 F.4th 801 (9th Cir. 2022), which held that a magistrate judge's denial of a Section 1782 application is subject to *de novo* review by a district judge. In *CPC*, the Ninth Circuit reasoned that the question of whether a decision is "dispositive" depends on whether it "disposes of the of the ultimate relief sought in the federal case." *Id.* 34 F.4th at 808 (internal citation omitted). In analogous contexts, such as an action to enforce an administrative subpoena, several courts of appeals have held that a magistrate judge's order is dispositive—and therefore subject to *de novo* review—because it "seals with finality the district court proceeding," even if the district court proceeding is "admittedly collateral" to the administrative proceeding. *N.L.R.B. v. Frazier*, 966 F.2d 812, 817–18 (3d Cir. 1992); *see also Khrapunov v. Prosyankin*, 931 F.3d 922, 927 (9th Cir. 2019) (Callahan concurring) (collecting cases).

6

The Court, however, need not decide here which party—and which courts—have the better of the argument, because for the reasons explained in this Opinion, it would affirm Judge Wang's Initial Order on October 6, 2023 granting the Section 1782 application under both a "clear error" standard and *de novo* review. As to K2's objections to Judge Wang's Discovery Order on May 18, 2022 granting Batbold's requests to compel and denying a stay of discovery, the parties do not dispute that the order was non-dispositive, and is therefore subject to clear-error review. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 403 (S.D.N.Y. 2020) (citing *Thomas E. Hoar*, 900 F.2d at 525) ("A magistrate judge's discovery orders are generally considered 'nondispositive' of the litigation.").

Finally, "Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge." *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013). Under *de novo* review pursuant to Rule 72(b), however, a Court may review the entirety of the record. *See* Fed. R. Civ. P. 72(b). *see also Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 52 (E.D.N.Y. 2008); *Nolasco v. United States*, 358 F. Supp. 2d 224, 229 n.9 (S.D.N.Y. 2004) ("[A] district court may receive further evidence when it undertakes a *de novo* review of a magistrate judge's findings.")

## II.    Applicable Law in Section 1782 Applications

A district court has the authority to grant a Section 1782 petition if three statutory requirements are met: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *see* 28 U.S.C. § 1782. As is relevant here, Section 1782 also provides that "[a] person may

not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." *Id.*

"Once the statutory requirements are met, a district court is free to grant discovery in its discretion." *Schmitz,* 376 F.3d at 83–84. There are four factors that guide a court's discretion to grant a Section 1782 application:

"(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which event 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad';

(2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance';

(3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and

(4) whether the request is 'unduly intrusive or burdensome.'"

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–265 (2004)). District courts have broad discretion over whether to grant Section 1782 applications. *See In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a)—both over whether to grant a discovery order and, if so, what limits to place on that discovery.")

## DISCUSSION

K2 raises the following four objections to Judge Wang's orders granting discovery in this matter:

"Objection 1: The Initial Order granting Section 1782 discovery (ECF 53), by reinstatement as permitted by the Court (ECF 77) and as directed by the Discovery Order (ECF 95 at 7);

8

Objection 2: The Magistrate Judge's decision to compel discovery without substantively considering the pretext of the Application (ECF 95);

Objection 3: The Magistrate Judge's orders compelling production or logging of third-party communications and underlying source documents (ECF 95 at 2-3), before accepting briefing on K2's motion to quash or for a protective order (ECF 95 at 7)[;]

Objection 4: The Magistrate Judge's order denying a stay of discovery during the pendency of these disputed matters (ECF 95 at 7)."

Objections at 10. The Court addresses each in turn.

## I.      Objection 1: The Initial Order Granting Discovery

K2 first objects to the Initial Order granting Batbold's application, arguing that Judge Wang misapplied the first and third discretionary factors set forth in *Intel*, while failing to consider K2's privilege concerns as well as the burdensomeness of the application. According to K2, the first *Intel* factor counsels against granting the Section 1782 application because, even though K2 is not a party in any of the foreign proceedings, K2 "is an agent for the Mongolian claimants, who are parties to the foreign proceedings," and further, that "K2 is effectively within the jurisdiction of the foreign tribunals" because K2's executive chairman, Jules Kroll, submitted sworn affidavits in all the foreign proceedings except in Mongolia. Objections at 14–15. K2 argues that the evidence Batbold seeks is therefore "obtainable without the aid of a U.S. court." *Id*. at 15.

As an initial matter, Judge Wang's Order correctly analyzed the first *Intel* factor, considering "whether the discovery is sought from a party within the foreign tribunal's jurisdictional reach." Order at 7; *see Intel*, 542 U.S. at 264 (noting that "when the person from whom discovery is sought is a participant in the foreign proceeding … the need for § 1782(a) aid generally is not as apparent" because the foreign tribunal may "itself order [those appearing before it] to produce evidence"). K2 argues that Kroll's submission of affidavits in the foreign proceedings subjects K2 to discovery in those jurisdictions, and that, because the English K2 entity

was involved in the investigation, it is within the jurisdiction of the English court. Dkt. 35 ("Walker Decl.") ¶ 10. Dkt. 36 ("Chua Decl.") ¶ 10. Batbold, however, has persuaded the Court that at least some of the discovery he seeks is *not* obtainable in the foreign proceedings, particularly where K2 has no presence and could not be compelled to provide discovery. Courts in Hong Kong and Singapore, for example, could not effectively enforce a discovery order against K2, which has no offices in those jurisdictions. *See* Dkt. 46 ("Suppl. Decl. of Batbold's Singapore Counsel") Dkt. 47 ("Suppl. Decl. of Batbold's Hong Kong Counsel"). Nor is the Court convinced that Kroll's submission of affidavits in the foreign proceedings subjects K2—and all the material that Batbold seeks—to the jurisdiction of those tribunals. Even assuming that Kroll is subject to cross-examination in the foreign jurisdictions in which he has submitted affidavits, Batbold seeks K2's documentary evidence, not Kroll's oral testimony. *See, e.g.,* Suppl. Decl. of Batbold's Hong Kong Counsel ¶ 5.

K2's reliance on *Kiobel*, moreover, is misplaced. In *Kiobel*, the Second Circuit considered a Section 1782 petition seeking discovery from the American law firm of a party, Royal Dutch Shell, in a proceeding in the Netherlands. Reversing the district court's grant of discovery against the law firm, the Second Circuit found that "when the real party from whom documents are sought (here, Shell) is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition seeking documents from U.S. counsel for the foreign company." 895 F.3d 238, 244 (2d Cir. 2018). K2 argues that, like the law firm in *Kiobel*, it is an "agent" of the "real party" from whom discovery is sought, and that its "client" is litigating in the jurisdiction of the foreign tribunals. But while *Kiobel* denied discovery against the American legal counsel of foreign parties, K2 has cited no case in which the first *Intel* factor weighs against granting a Section 1782 application against a foreign litigant's U.S.-based investigative firm, nor has the Court identified

one.[1] More generally, the first *Intel* factor "is concerned with the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application." *In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018), *aff'd*, 791 F. App'x 247 (2d Cir. 2019) (internal citation omitted). As such, the Court does not read *Kiobel* to impose a rigid requirement on district courts to weigh the first factor against "agents" of foreign parties.

In any event, it is far from clear that K2 is in fact an "agent" of any of the Foreign Plaintiffs. K2 asserts that it was retained by the Mongolian Office of the Prosecutor General to conduct its investigation into Batbold under the supervision of King & Spalding, the law firm purportedly representing the Foreign Plaintiffs in the foreign proceedings. Kroll Decl. ¶ 4; Walker Decl. ¶ 3. But the Foreign Plaintiffs—the actual named parties in the foreign litigations—have denied that they authorized the Office of the Prosecutor General to initiate litigation against Batbold. Dkts. 16-23 to 16-26. K2 maintains that even if the Foreign Plaintiffs "did not themselves authorize the proceedings," the Office of the Prosecutor General "has the authority to bring proceedings on their behalf under Mongolian law" on its own initiative. Dkt. 34 ¶ 5. Soon after Judge Wang issued her initial order, however, the Office of the Prosecutor General expressly terminated King & Spalding's authorization to litigate the foreign proceedings. Dkts. 79, 81; *see also* Dkt. 147-2 (letter from King & Spalding acknowledging Mongolian prosecutor terminating authorization to

---

[1] Indeed, courts have found that the first *Intel* factor does not weigh against granting discovery against U.S. corporate affiliates of participants in foreign proceedings, even where the foreign participant may also possess the sought-after information. *See In re Application of CBRE Glob. Invs. (NL) B.V.*, 20-MC-315 (VEC), 2021 WL 2894721, at *10 (S.D.N.Y. July 9, 2021) (granting Section 1782 application against U.S. corporate affiliate of party to foreign proceeding); *In re Top Matrix Holdings Ltd.*, No. 18-MC-465 (ER), 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) ("Notwithstanding the likelihood that [the foreign corporate parent] also has the requested information, [the respondents] have separate legal personalities, and neither is within the jurisdiction of the Swiss courts… the court is not prohibited from compelling discovery of information in possession of both a parent company and its subsidiary.").

pursue foreign litigation). Indeed, on July 7, 2022, King & Spalding sought to withdraw as counsel in the proceeding in England. Dkt 138-1. In light of the above—and given that K2 conducted its investigation under King & Spalding's supervision—the Court is not persuaded that K2 is a "participant" in the foreign proceedings such that the discovery Batbold seeks from K2 is within "the foreign tribunal[s'] jurisdictional reach." *Intel*, 542 U.S. at 264.

Next, K2 contests Judge Wang's finding that Batbold's application "is not an attempt to circumvent [limitations on] discovery in the Foreign Proceedings." Initial Order at 8. K2 argues that the third *Intel* factor counsels against granting discovery because Batbold "expected his requests would be denied by the foreign tribunals," and that Batbold should have sought discovery in the foreign proceedings before seeking discovery here. Objections at 16.

K2 has presented little evidence that Batbold seeks to bypass foreign proof-gathering restrictions. Its declarations indicate that, at most, "many of the documents" Batbold seeks are protected by foreign privilege rules or would be "unlikely … to be material" to the foreign tribunals. Walker Decl. ¶¶ 8, 12 ("[M]any of the documents sought by Mr. Batbold are in any event protected from disclosure by English law of privilege."); Dkt. 37 ("Hui Decl.") ¶ 11 (the evidence is "likely protected under litigation privilege under Hong Kong law"); Chua Decl. ¶ 10. But the third *Intel* factor "weighs against [a Section 1782] application only if permitting discovery would violate 'the clearly established procedures of a foreign tribunal'" in light of "authoritative proof." *In re Arida, LLC,* No. 19-MC-522 (PKC), 2020 WL 7496355, at *8 (S.D.N.Y. Dec. 21, 2020) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995)).[2]

---

[2] K2 again relies on *Kiobel*, but there, the Second Circuit found that the third *Intel* factor weighed against granting discovery because at the relevant stage of the foreign proceeding in the Netherlands it was "hardly possible for a party to obtain evidence from another party." *Kiobel*, 895 F.3d at 245 n.3. As a result, the court found that the Section 1782 application was an attempt to "bypass Dutch discovery restrictions." *Id.* No such procedural bar has been identified here, where the parties dispute instead the extent to which those documents are privileged.

Batbold submitted testimony from his legal counsel in each of the foreign jurisdictions asserting that the discovery he seeks here would be discoverable in the foreign proceedings and would not be barred under foreign privilege rules. *See, e.g.,* Decl. of Batbold's Singapore Counsel ¶ 10 ("[U]nder Singaporean law, factual documents undergirding investigations are not privileged, even if investigations are conducted at the direction of counsel"); Decl. of Batbold's Hong Kong Counsel ¶¶ 13–15 ("Moreover, the discovery sought here would not be barred by any privilege under the law in Hong Kong, should that law apply. Indeed, under the law in Hong Kong, factual documents supporting investigations are ordinarily not privileged."). And as Judge Wang correctly noted in the Initial Order, Batbold was not required to seek discovery in the foreign proceedings before seeking it here. *See, e.g., In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (rejecting "quasi-exhaustion requirement" in Section 1782 applications); *Azima v. Handjani*, No. 21-MC-501 (PGG), 2022 WL 2788400, at *7 (S.D.N.Y. July 15, 2022) (noting that a "district court may not condition discovery on an applicant first attempting to obtain discovery in the foreign court"). Accordingly, the third *Intel* factor does not weigh against granting the application.

K2 next argues that Judge Wang improperly granted Batbold's application without considering the privilege concerns raised by the application. K2 relies on the text of Section 1782, which provides that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782. But Section 1782 does not pose an absolute bar against discovery whenever there is a dispute about whether some of the materials sought are privileged. "Absent authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782 … because of a violation of the alleged privilege[,] a district court should not refrain from granting the assistance

13

afforded under the Act based simply on allegations to that effect." *Metallgesellschaft*, 121 F.3d at 80. Batbold's declarations aver that he seeks non-privileged information related to K2's investigation, which he asserts was a "general probe" that began before litigation was reasonably contemplated, Suppl. Decl. of Batbold's Hong Kong Counsel ¶¶ 6, 7, and is thus non-privileged, as well as information related to the identity of the parties funding the investigation, Decl. of Batbold's Counsel in the United Kingdom ¶ 10; Decl. of Batbold's Counsel in Hong Kong ¶ 14; *see also Lefcourt v. United States*, 125 F.3d 79, 86 (2d Cir. 1997) ("As a general rule, a client's identity and fee information are not privileged."). K2, for its part, asserts that the materials Batbold seeks are "likely protected by K2's client's privileges because they were collected and prepared for purposes of the now-ongoing litigation," Hui Decl. ¶ 11, but appears to concede that at least some of the material is not privileged, Walker Decl. ¶ 12 (declaring that "many of the documents" Batbold seeks are protected by English privilege laws). As a result, the Court finds no error in Judge Wang's conclusion that Batbold seeks non-privileged information about the K2 investigation. Initial Order at 9.

Furthermore, accepting K2's contention that at least some of the information that Batbold seeks is privileged, Judge Wang properly "exercise[d] [her] discretion to tailor the requests accordingly, rather than deny the application outright." *In re Arida, LLC*, No. 19-MC-522 (PKC), 2020 WL 7496355, at *10 (S.D.N.Y. Dec. 21, 2020) (citing *Megallgesellschaft*, 121 F.3d at 80); s*ee Fund for Prot. of Inv. Rts. in Foreign States Pursuant to 28 U.S.C. § 1782 for Ord. Granting Leave to Obtain Discovery for use in Foreign Proceeding v. AlixPartners, LLP*, 5 F.4th 216, 232 (2d Cir.), *rev'd on other grounds sub nom. ZF Auto. US, Inc. v. Luxshare, Ltd.*, 213 L. Ed. 2d 163, 142 S. Ct. 2078 (2022) (finding no error in district court's grant of a Section 1782 application and deferring consideration of foreign privilege issues "as necessary and appropriate as discovery

proceeds, such as by granting protective orders or hearing objections"). Judge Wang ruled in her Initial Order that "[t]o the extent K2 raises concerns about privilege, those concerns would be better addressed in a future discovery motion when the Court can look at actual discovery requests." Initial Order at 8; *see In re Chevron Corp.*, 749 F. Supp. 2d 141, 168 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) (The proper course is to allow the process to go forward and to adjudicate the claims of privilege in due course."). In light of the Second Circuit's admonition that courts should avoid "a battle-by-affidavit of international legal experts" over the discoverability of evidence in foreign jurisdictions, Judge Wang correctly declined to deny the application on privilege grounds. *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995).

For similar reasons, the Court rejects K2's argument that the Initial Order incorrectly applied the fourth *Intel* factor by not considering the burden imposed by Batbold's application. Objections at 21. The Second Circuit has advised that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995); *see also In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 252 (S.D.N.Y. 2018) (noting that "nothing in the Court's ruling [granting the Section 1782 application] precludes Respondents from filing overbreadth objections to subpoenas, which would permit further tailoring on a per-request basis"). Even assuming that Judge Wang was incorrect in concluding that Batbold's application is "limited to non-privileged information about the K2 investigation" and several discrete categories of information, she properly authorized him to serve the subpoenas and concluded that she "ha[d] the authority to closely tailor any future discovery order." Initial Order at 9.

15

## II.     Objection 2: Judge Wang's Consideration of Pretext

K2's second objection is to Judge Wang's decision on May 18, 2022 to compel discovery "without substantively considering the pretext of the Application." Objections at 10. At the April 26, 2022 hearing, Judge Wang noted that "the party who has to show pretext carries a pretty high burden, and I don't think that's been shown here." Hr'g Tr. 77:17–18. She further concluded that the discovery Batbold seeks is "relevant to the current proceeding[s]." Hr'g Tr. 77:19–24. According to K2, however, the evidence Batbold seeks is "only marginally relevant to the foreign proceedings" and "can certainly be used for other, improper purposes." Objections at 20–21. K2 argues that district courts should reject discovery applications that are as "attenuated from the merits of the foreign litigation" as this one. *In re Tiberius Grp. AG*, 19-MC-467 (VSB), 2020 WL 5535272, at *5 (S.D.N.Y. Sept. 14, 2020).

A court may deny a 1782 Application where the petitioner "fails to show that the materials sought will be of any use in the foreign proceeding." *Mees v. Buiter*, 793 F.3d 291, 299 n.10 (2d Cir. 2015). "A request that appears only marginally relevant to the foreign proceeding may in certain cases suggest that the application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials." *Id*. at 299 (2d Cir. 2015) (internal citations omitted). However, the Second Circuit has expressly rejected a "necessity requirement" on the ground that it would be "unwise" to require "a painstaking analysis not only of the evidence already available to the applicant, but also of the amount of evidence required to prevail in the foreign proceeding." *Id.* at 298. As a result, "the term 'for use' in Section 1782 has only its ordinary meaning—that the requested discovery is something that will be employed with some advantage or serve some use in the proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (internal citation omitted).

The parties also disagree about the relevance of the discovery sought here. Batbold asserts that "K2 possesses information about the investigation, ranging from its genesis, source of funding, findings, and the materials it generated" that is "critical to Mr. Batbold's defense worldwide." Response at 20. Batbold's foreign counsel declare that the documents K2 possesses, including those from its multi-year investigation, "may contain exculpatory information Mr. Batbold could use" in each of the foreign proceedings, as well as evidence on the motivations of his accusers that could call the propriety of the freezing injunctions into question. Decl. of Batbold's U.K. Counsel ¶ 7; Decl. of Batbold's Hong Kong Counsel ¶ 9 (the evidence "could inform the Court's opinion as to whether the *ex parte* relief was warranted in the first instance and whether it should be lifted"); Decl. of Batbold's Counsel in Mongolia ¶ 12 ("This discovery is highly relevant to Mr. Batbold's anticipated defenses and strategy in the Mongolian Proceeding…"). K2, by contrast, asserts that "the evidence sought here has minimal use in the foreign proceedings," arguing that the "focus of Batbold's discovery efforts" is "to attack his adversaries." Objections at 20; *see* Walker Decl. ¶ 8 ("[I]t is unlikely that the English Court would consider K2's funding or source of authority to be material given the very significant volume of documentary evidence that has been submitted on the question of Mr. Batbold's wrongdoing.").

Having reviewed the record, the Court finds that Batbold has demonstrated that the discovery "can be made use of in the foreign proceeding to increase [his] chances of success." *Mees*, 793 F.3d at 299; *see also In re Grynberg*, 223 F. Supp. 3d 197, 201 (S.D.N.Y. 2017) (denying Section 1782 application on discretionary grounds but finding petitioner had met the Section 1782 jurisdictional requirements where it was "possible that [petitioner] could use discovery from [respondent] and his associates" in the foreign proceeding). As Batbold argues, K2's documents could be used to challenge the evidentiary basis upon which the freezing

injunctions were sought, and the documents were clearly pertinent to the corruption allegations against him in the Mongolian litigation, Dkt. 21, as well as the new Mongolian proceedings filed in May 2022, Dkt. 139. Where courts have denied discovery on the "for use" prong, they have done so because applicants sought discovery "to determine if it should pursue [separate] litigation against Respondents," *Ayyash v. Crowe Horwath LLP*, No. 17-MC-482(AJN), 2018 WL 2976017, at *3 (S.D.N.Y. June 13, 2018) or where the applicant made "no showing" that the evidence was "for use" in the foreign proceeding, *In re Postalis*, No. 18-MC-497 (JGK), 2018 WL 6725406, at *4 (S.D.N.Y. Dec. 20, 2018).

K2 argues that Batbold seeks discovery to plan "future litigation in Mongolia," Objections at 20, which Batbold disputes on the grounds that, as of the date of Judge Wang's Discovery Order, he had already initiated that litigation. Response at 21, Dkt. 139-1. Moreover, the fact that discovery sought in a Section 1782 application may also be used in a future litigation does not necessarily require a court to deny the application. *See In re Accent Delight Int'l Ltd.*, 869 F.3d at 124 (noting that Section 1782 does not forbid a discovery applicant from using lawfully obtained evidence in subsequent foreign proceedings); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (finding that "the fact that [the applicant] may also be able to use the discovery in future litigation against the respondents is immaterial" to decision to grant application). K2 contends that Batbold's proposed discovery search request based on four names of his political adversaries" indicates that he intends to use the discovery to target his political opponents. But Batbold asserts, and Judge Wang agreed, that the four individuals are relevant to Batbold's defense in the foreign proceedings. Decl. of Batbold's U.K. Counsel ¶ 6; Hr'g Tr. 50:16–18. As such, the materials Batbold seeks are relevant to the foreign proceedings and the application is not pretextual.

### III.    Objection 3: The Order Compelling Discovery

K2 next objects to Judge Wang's order compelling production or logging third-party communications "before accepting briefing on K2's motion to quash or for a protective order." Objections at 10. According to K2, Judge Wang "declined to address" the issues in its premotion letter in anticipation of its motion to quash or for a protective order, and instead "order[ed] substantial discovery from K2 without substantive briefing." *Id.* at 23. K2 argues that the material Judge Wang ordered it to produce "intrudes directly in the zone of privacy that the attorney work product doctrine and the English litigation privilege provide for attorneys and agents like K2 to prepare for litigation" and K2 "must now either produce potentially privileged documents or log them before its privilege objects are resolved." *Id.* at 24.

Judge Wang heard arguments from the parties about the scope and considered letter briefs from the parties, ultimately ordering K2 to produce several categories of documents that she found were not privileged. Hr'g Tr. 78:2–7; *see, e.g., Marquez v. Hoffman*, No. 18-CV-7315 (ALC), 2019 WL 5940151, at *4 (S.D.N.Y. Oct. 25, 2019) (finding that magistrate judge did not err in ordering discovery to proceed despite ongoing dispute on scope of discovery). Judge Wang noted at the conference that she had "not ordered the disclosure of anything that's privileged, I've only told you that if there is privileged material[] out of the very narrow scope of information that I've directed to be produced that you put together a privilege log" and confer about privilege issues at a future date. Hr'g Tr. 78:2–8. The Discovery Order further directed K2 to log the materials it asserted were privileged and ordered the parties to propose a briefing schedule on a motion to quash in the event the parties did not reach an agreement on narrowing the scope of Batbold's discovery requests. Hr'g Tr. 78:2–7. Accordingly, the Court finds no clear error in Judge Wang's issuance of a tailored discovery order before accepting briefing on K2s motion to quash.

IV.    **Objection 4: Judge Wang's Denial of a Stay of Discovery**

Finally, K2 objects to Judge Wang's order denying a stay of discovery during the pendency of its Objections to her October 6, 2021 order and the privilege concerns raised by K2. A discovery stay may be entered upon the moving party's showing of "good cause" or "where resolution of a preliminary motion may dispose of an entire action." *Thai Lao Lignite*, 924 F. Supp. 2d at 527 (quoting *Siemens Credit Corp. v. Am. Tran. Ins. Co.,* No. 00-CV-0880 BSJ, 2000 WL 534497, at *1 (S.D.N.Y. May 3, 2000)) (distinguishing the factors governing a stay of discovery and stay of an order pending appeal). Although Judge Wang's order did not set forth her reasoning for denying a stay of discovery, the Court finds no clear error. Judge Wang tailored the initial stages of discovery to several discrete categories, ordered a privilege log, and instructed the parties to meet and confer on narrowing the scope of discovery, limiting the burden on K2. Discovery Order at 1– 3, 7. Considering the length of time this matter had been pending, Judge Wang's order was not clearly erroneous. *Thai Lao Lignite*, 924 F. Supp. 2d at 528 (finding no clear error in denying stay of discovery where matter had been pending for two years).

## CONCLUSION

For the foregoing reasons, K2's objections are overruled. Judge Wang's October 6, 2021 and May 18, 2022 orders are affirmed.

SO ORDERED.

Dated:    February 17, 2023
          New York, New York

_____
Ronnie Abrams
United States District Judge